# United States Court of Appeals

## For the First Circuit

No. 09-2410

UNITED STATES OF AMERICA,

Appellee,

v.

VAN THI NGUYEN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Selya, Lipez and Howard, Circuit Judges.

Jane Elizabeth Lee, by appointment of the court, on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, and John P. Kacavas, United States Attorney, on brief for appellee.

September 1, 2010

**SELYA**, **Circuit Judge**. Defendant-appellant Van Thi Nguyen pleaded guilty to criminal charges pursuant to a plea agreement (the Agreement). The district court sentenced her, and that sentence is the focal point of this appeal. Concluding, as we do, that appellate review is foreclosed by a waiver-of-appeal provision contained in the Agreement, we dismiss the appeal.

Because this appeal follows a guilty plea and concomitant sentence, we take the facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. See United States v. Calderón-Pacheco, 564 F.3d 55, 56 (1st Cir. 2009); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

In October of 2006, a task force composed of federal Drug Enforcement Administration agents and New Hampshire law enforcement officers unearthed a large-scale marijuana cultivation operation. Subsequent investigation revealed that the operators had acquired no fewer than eleven residences in central and southern New Hampshire as sites for cultivating marijuana. The appellant played key roles in acquiring certain of these properties and in operating the marijuana-growing scheme.

In due season, a federal grand jury empaneled in the District of New Hampshire handed up an indictment that charged the appellant with conspiracy to possess with intent to manufacture 1,000 or more marijuana plants, possession with intent to

-2-

distribute 1,000 or more marijuana plants, and wire fraud.  See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 1343.  After originally maintaining her innocence, the appellant pleaded guilty, pursuant to the Agreement, to one count of possession with intent to manufacture 1,000 or more marijuana plants and to two counts of wire fraud.

The Agreement contained a waiver-of-appeal provision, which explained with conspicuous clarity that, by entering into the Agreement, the appellant — with exceptions not relevant here — surrendered her right to appeal any sentence imposed on the counts of conviction.  At the change-of-plea hearing, the district court called this provision to the appellant's attention and ensured that she grasped its import.

The district court convened the disposition hearing on September 28, 2009.  The court conducted a careful inquiry into the appellant's understanding of the PSI Report.  The appellant confirmed that she had discussed the report with her lawyer and fully understood its contents.

The court then adopted the guideline calculations adumbrated in the PSI Report and sentenced the appellant to an 83-month term of immurement, to be followed by four years of supervised release.  The court required, as one of several conditions of supervised release, that the appellant submit to a drug test within fifteen days of her release from confinement and

-3-

to periodic drug tests thereafter during her supervised release term. The appellant did not interpose any contemporaneous objection to the drug-testing condition.

This timely appeal ensued. The appellant, through new appellate counsel, advances two claims of error. We examine these claims sequentially.

Federal Rule of Criminal Procedure 32(i)(1)(A) requires a sentencing court to "verify that the defendant and the defendant's attorney have read and discussed the presentence report . . . ." The appellant's principal claim of error posits that the district court failed adequately to comply with this requirement.

In order to succeed on this claim, the appellant must surmount a threshold barrier: the waiver-of-appeal provision contained in the Agreement. In general, a waiver of appellate rights is enforceable in a criminal case if and to the extent that the "defendant enter[ed] into it knowingly and voluntarily." United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001). Determining whether this benchmark has been achieved requires two steps, collectively comprising an appraisal of the nature and circumstances of the waiver itself. Id. First, the plea agreement must clearly set forth the scope and terms of the waiver. Id. Second, the sentencing court must pay particular heed to the waiver, questioning the defendant specifically about her

understanding of the waiver provision and its ramifications. <u>Id.</u>; <u>see</u> <u>also</u> Fed. R. Crim. P. 11(b)(1)(N).

If this appraisal shows that the waiver was made knowingly and voluntarily, the waiver is presumptively enforceable. But if the challenger persists, an additional step must be taken: even if the waiver passes muster at the first two steps, an appellate court will not enforce it if doing so would work a miscarriage of justice.[1] <u>See</u> <u>Sotirion</u> v. <u>United States</u>, ___ F.3d ___, ___ (1st Cir. 2010) [2010 WL 3025511, at *4]; <u>Teeter</u>, 257 F.3d at 25. The circumstances potentially justifying a refusal to enforce a waiver on this ground are "infinitely variable." <u>Teeter</u>, 257 F.3d at 25, n.9. They may include factors related to the nature and circumstances of the waiver itself, but they also may include unrelated factors. We have noted that appropriate factors for consideration in determining whether enforcement of a waiver of appeal would lead to a miscarriage of justice include the character, clarity, and gravity of the claim of error, its impact on the defendant, any possible prejudice to the government that might accompany a refusal to honor the waiver, and the extent to

---

[1] To the extent that <u>United States</u> v. <u>Isom</u>, 580 F.3d 43, 50 (1st Cir. 2009), suggests that the "miscarriage of justice" step in the <u>Teeter</u> analysis is limited to ensuring that the waiver was entered into knowingly and voluntarily, it is inconsistent with our other cases and does not properly limn the distinction between the determination of whether a waiver was knowing and voluntary and our independent discretion to refuse to enforce a waiver in order to avoid a miscarriage of justice.

which the defendant can fairly be said to have acquiesced in the result.  Id. at 26.  "[E]ven if the waiver is knowing and voluntary, we retain discretion not to enforce the waiver if it would result in a miscarriage of justice."  Sotirion, ___ F.3d at ___ [2010 WL 3025511, at *4] (citations and internal quotation marks omitted).

In the case at hand, the appellant does not question either the clarity of the waiver or her understanding of it.  In effect, she concedes that she knowingly and voluntarily entered into the waiver and, instead, zeroes in on the miscarriage of justice exception.  Thus, we train the lens of our inquiry on the prospect of a miscarriage of justice.

It is rare that a court may refuse to enforce a clear and well-comprehended waiver of appeal based on the exception for miscarriages of justice.  See, e.g., United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008).  After all, the miscarriage of justice exception is to "be applied sparingly and without undue generosity."  United States v. De-La-Cruz Castro, 299 F.3d 5, 13 (1st Cir. 2002) (quoting Teeter, 257 F.3d at 26); see also United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007).  We add that, in order to show a miscarriage of justice, a party who seeks to appeal in the teeth of a knowing and voluntary waiver of appeal must show more than reversible error.  Triggering the miscarriage of justice exception requires, at a bare minimum, an increment of

error more glaring than routine reversible error.  <u>Miliano</u>, 480 F.3d at 608.

In this instance, the appellant claims that the district court violated Rule 32(i)(1)(A) by failing to have the PSI Report translated into Vietnamese (her native tongue).  The record belies this claim.

At the disposition hearing, the district court went the extra mile.  It confirmed that the appellant was familiar with, and fully understood, the PSI Report.  The court also confirmed that the appellant's lawyer had thoroughly explained it to her.  In the course of this inquiry, the appellant's counsel assured the court that his client understood English very well.  He likewise assured the court that the appellant had advised him that she understood everything in the report.  When the court addressed the appellant directly, she confirmed what her counsel had said.  The district court was entitled to rely on these representations.  <u>See</u> <u>United States</u> v. <u>Cruz</u>, 981 F.2d 613, 620 (1st Cir. 1992).  Doing so did not constitute a miscarriage of justice.

In an effort to blunt the force of this reasoning, the appellant argues that the district court violated her rights under the Court Interpreters Act, 28 U.S.C. § 1827, by not requiring translation of the PSI Report into Vietnamese.  The short answer to this plaint is that the district court never found, and the record does not suggest, that the appellant needed the services of an

interpreter. Indeed, the district court, as a precaution, prudently arranged for the presence of an interpreter at sentencing, but the appellant and her lawyer made it abundantly clear that the appellant did not require any such assistance. Accordingly, the appellant's invocation of the Court Interpreters Act rings hollow.

In sum, the claim that the district court violated Rule 32(i)(1)(A) is weak, and the claim that the court violated the Court Interpreters Act is simply wrong. In light of the appellant's representations, it appears that the absence of a translation had no effect on her substantial rights. And at any rate, the appellant's conduct contributed heavily to the lack of a translation. Under these circumstances, there is no principled way in which we can find a miscarriage of justice.

The appellant's other claim of error concerns the condition of supervised release directing her to submit to periodic drug testing. The waiver-of-appeal provision applies to this claim as well.

Once again, the appellant's only hope is to raise the incubus of a miscarriage of justice. Under ordinary circumstances, the district court has significant discretion in formulating conditions of supervised release. See, e.g., United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000). That discretion is heightened here because the drug-testing condition is one of the standard conditions of supervised release. See 18 U.S.C. § 3583(d); USSG

§5D1.3(a)(4). As such, its imposition is presumptively appropriate. See, e.g., United States v. Paul, 542 F.3d 596, 600 (7th Cir. 2008); United States v. De Los Santos, 420 F.3d 10, 15-16 (1st Cir. 2005).

The appellant argues that the drug-testing condition should not have been imposed because nothing in the record suggests that she herself used drugs. This is a non-sequitur. Even though a district court has discretion to refrain from imposing this standard condition of supervised release, see, e.g., 18 U.S.C. § 3583(d), leaving it intact does not require a showing that the defendant has a history of drug use. See, e.g., Paul, 542 F.3d at 600; United States v. Tulloch, 380 F.3d 8, 11-12 (1st Cir. 2004) (per curiam).

In this case, the challenged condition was plainly warranted. The principal offense of conviction stemmed from the appellant's central role in a large-scale, drug-related enterprise. Thus, the challenged condition fit the circumstances of the crime. There was no error and, a fortiori, no miscarriage of justice.

We need go no further. For the reasons elucidated above, we dismiss the appeal.


**Dismissed**.