# United States Court of Appeals
## For the First Circuit

No. 13-1060

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE RIVERA-LÓPEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Baldock,* and Thompson,
Circuit Judges.

Miriam Ramos-Grateroles, for appellant.
Vincent J. Falvo, Jr., Attorney, Appellate Section, U.S. Department of Justice, with whom Mythili Raman, Acting Assistant Attorney General, Denis J. McInerney, Acting Deputy Assistant Attorney General, Víctor Acevedo, Assistant U.S. Attorney, District of Puerto Rico, and Michael C. Bagge, Assistant U.S. Attorney, District of Puerto Rico, was on brief for appellee.

November 25, 2013

---

* Of the Tenth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** Facing a five count indictment on narcotics and firearm charges, Jorge Rivera-López ("Rivera") entered into a plea agreement containing a waiver-of-appeal provision. Pursuant to that agreement, he was sentenced to sixty months of imprisonment and a five-year term of supervised release. For the first six months of his supervised release, Rivera's sentence also included a nighttime curfew and twenty-four-hour electronic monitoring. He now seeks to appeal these two conditions of supervised release, arguing that their imposition amounts to a miscarriage of justice. Upon review, we find that Rivera's appellate waiver extends to the contested conditions and, consequently, dismiss his appeal.

## I. Background

In August 2012, Puerto Rico Police Department officers executed a search warrant of an apartment in which Rivera was sleeping. Inside, the officers found two firearms and multiple controlled substances. An indictment followed, charging Rivera and his two co-defendants each with four counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i-ii).

Rivera subsequently entered into a plea agreement, admitting guilt as to the firearms charge. In exchange for this

guilty plea, the government recommended that all four counts of narcotics possession be dismissed and that Rivera be sentenced to a term of sixty months of imprisonment. Under a provision titled "Maximum Penalties," the agreement made clear that Rivera faced "a minimum term of imprisonment of five [] years and a maximum term of life in prison" as well as "a supervised release term of not more than five [] years." Another provision, titled "Waiver of Appeal," stated that Rivera would not seek appellate review of any "judgment and sentence" that was in accordance with the agreement's terms and recommendations.

The district court imposed the recommended term of sixty months of imprisonment as well as a five-year term of supervised release. For the first six months of supervised release, the court further required Rivera to comply with curfew and electronic monitoring conditions:

> [Rivera] shall remain under curfew at his residence of record from 6:00 pm to 6:00 am for a period of six [] months to commence upon his release from imprisonment. During this time, he shall remain in his place of residence, except for employment or other activities approved in advance by the probation officer. The defendant shall maintain a telephone at his residence without a modem, an answering machine, or a cordless feature during the term of electronic monitoring. He shall wear an electronic device 24 hours a day . . . . He is ordered to pay the daily cost of [the] Electronic

Monitoring Device, according to his ability to pay it.[1]

Rivera objected at sentencing, arguing that the conditions were insufficiently related to the crime charged and inconsistent with the sentences of his co-defendants, which did not include curfew or electronic monitoring conditions. The district court judge responded that "[i]n my courtroom, all gun cases receive [these] condition[s]."

---

[1] In his appellate brief, Rivera styled the requirement that he maintain a phone line without a modem as a ban on home internet use. In its briefs, the government did not contest this construction of the issue and, in fact, wholly failed to discuss or address the purported "internet ban." The government's position was not elucidated until oral argument, where it asserted, for the first time, that this condition was not an internet ban, but served only the more limited purpose of ensuring a "clean" phone line for electronic monitoring. As such, the government made clear its belief that Rivera is free to maintain a second line with a modem or to access the internet via any other available method throughout his term of supervised release. Pursuant to our request, on November 6, 2013 the government filed a letter with the court -- now part of the official docket -- restating this position in writing. Therefore, while we note in passing the limits this court has placed on the scope of internet bans, requiring a significant nexus between internet use and the crime committed, see United States v. Perazza-Mercado, 553 F.3d 65 (1st Cir. 2009), we see no need to address the argument further. Rather, we interpret the condition as the government asserts we should: not as a ban on internet use, but only as a requirement that Rivera maintain a "clean" phone line. Indeed, the condition's language affirmatively commands one particular action (i.e., the maintenance of a certain type of phone line), but does not expressly prohibit any other, including that of accessing the internet from home. Because sentencing judges know well how to construct bans on internet use, we trust that they will continue to do so explicitly when such conditions are appropriate. Moreover, when imposing conditions of electronic monitoring in the future, we expect that they will take care to disabuse defendants of the mistaken but plausible interpretation of this provision adopted by Rivera.

Rivera now seeks to appeal these same conditions, reasserting his objections below. Acknowledging that his waiver-of-appeal was knowing and voluntary, he nonetheless asks this court to vacate the conditions so as to avoid a miscarriage of justice.

## II. Discussion

Where knowing and voluntary, an appellate waiver is generally enforceable, absent indications that such a waiver would work a "miscarriage of justice." United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001). We have declined to strictly delineate the boundaries of this miscarriage-of-justice exception, choosing instead to review claims wholesale, with an eye to the "character, clarity, and gravity of the claim of error." United States v. Nguyen, 618 F.3d 72, 75 (1st Cir. 2010) (recognizing that "[t]he circumstances potentially justifying a refusal to enforce a waiver on this ground are 'infinitely variable'" (quoting Teeter, 257 F.3d at 25 n.9)). What is clear, however, is that the exception is to "be applied sparingly and without undue generosity"; mere "garden-variety" claims of error are insufficient to sustain an appeal in the face of waiver. Teeter, 257 F.3d at 26; see also United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007) (requiring, to overcome an appellate waiver, "an increment of error more glaring than routine reversible error").

Rivera readily concedes that his decision to enter into the plea agreement, including the waiver of appeal, was both knowing and voluntary. He also admits that the district court made sure he understood the nature of this waiver. Therefore, we take up only the limited question of whether the contested conditions amount to a miscarriage of justice. See Nguyen, 618 F.3d at 75.

Sentencing judges have broad discretion to impose conditions of release so long as they are "reasonably related" to (1) the underlying offense or character and criminal history of the defendant; (2) the need to deter criminal conduct; (3) the goal of protecting the public; or (4) the provision of rehabilitative educational, health, or other treatment for the defendant. U.S.S.G. § 5D1.3(b); see also 18 U.S.C. § 3583(d); United States v. Brown, 235 F.3d 2, 6 (1st Cir. 2000) ("[T]he critical test is whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release."). Such conditions must also "involve no greater deprivation of liberty than is reasonably necessary." U.S.S.G. § 5D1.3(b); see also 18 U.S.C. § 3583(d)(2).

Rivera's argument is twofold. First, that the imposition of the curfew and electronic monitoring conditions circumscribes his liberty to a greater extent than necessary or appropriate. Second, that the district court lacked any reasoned basis for these conditions, as illustrated by the inconsistent sentences of

Rivera's co-defendants and the overly broad statement that "all gun cases" are subject to the same. In combination, he asserts that these errors are of such significance that allowing his appellate waiver to stand would shield from our review a miscarriage of justice.

As an initial matter, the co-defendants' sentences are not before us on this appeal, and therefore we decline to speculate as to why the same conditions were not imposed on those individuals. When "identically situated defendants" receive significantly disparate sentences, red flags may indeed be raised. United States v. Mueffelman, 470 F.3d 33, 41 (1st Cir. 2006). Where supported by reason, however, the mere existence of a disparity in sentencing between co-defendants in no way necessitates a finding of error. See, e.g., United States v. Marceau, 554 F.3d 24, 33-34 (1st Cir. 2009). Certainly, no such finding is required here, as Rivera did not even attempt to substantiate his miscarriage-of-justice claim with proof that he and his co-defendants were, in fact, identically situated. Therefore, we focus our review only on whether the conditions of Rivera's supervised release were so lacking in rationality or so wholly unrelated to legitimate sentencing purposes as to necessitate invalidating his waiver of appeal.

Even setting aside the district court's proffered explanation that "all gun cases" receive the special conditions in

question,[2] the record suggests an alternative basis for their imposition in Rivera's case. See United States v. Garrastequy, 559 F.3d 34, 42 (1st Cir. 2009) ("[The] requirement [that conditions be supported] can be satisfied without a written or oral explanation . . . if we can infer the court's reasoning by comparing what was argued by the parties or contained in the pre-sentence report with what the court did." (citing United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc)).  At sentencing, Rivera presented his long history of significant substance abuse, failed treatment attempts, and suicidality as factors in support of mitigation.  He also requested that the district court recommend him for participation in an appropriate drug treatment program and receipt of mental health care while incarcerated.  In light of Rivera's choice to draw the court's attention to his history of drug abuse and failed treatment attempts, the curfew and electronic monitoring conditions can be understood as efforts to assist in his rehabilitation.

Because of the waiver of appeal at play in this case, see Miliano, 480 F.3d at 608 (requiring more than reversible error to sustain a finding of a miscarriage of justice), we need not plumb

---

[2]  Noting the serious nature of the firearms charge, we might have simply considered whether the conditions were a permissible response to that conviction.  Because Rivera has called our attention to the disparity between the district court's claim that all gun cases receive these conditions and the sentences of his co-defendants, however, we review the record to see if there exists a reasoned rationale for that distinction.

the exact contours of a court's ability to impose such special conditions. In fact, we explicitly decline to suggest that such conditions, if squarely before us on appeal, would necessarily be found appropriate, as we can easily conceive of instances where past substance abuse is so unrelated to the crime charged or separated by a sufficient passage of time as to make these conditions unwarranted. See Brown, 235 F.3d at 7 ("The hallmark that separates impermissible conditions from permissible ones is whether, on a given set of facts, a particular restriction is clearly unnecessary.").

As to the much simpler question of whether the conditions are so clearly erroneous and unsubstantiated as to work a miscarriage of justice, however, the answer is clear. They are not. The miscarriage-of-justice standard is a steep obstacle for potential appellants to overcome, see Teeter, 257 F.3d at 26, and Rivera's history of drug abuse, charged conduct, and request for treatment makes clear that the contested conditions are sufficiently related to legitimate goals of sentencing as to fall within the auspices of his waiver of appeal. Cf. Nguyen, 618 F.3d at 76 (finding a condition of supervised release warranted, and thus necessarily insufficient to overcome a waiver of appeal). Thus, we hold that Rivera's knowing and voluntary waiver of appeal bars his instant challenge.

### III. Conclusion

For the reasons stated herein, Rivera's appeal is dismissed.

**Dismissed**.