# United States Court of Appeals
## For the First Circuit

No. 13-1146

UNITED STATES,

Appellee,

v.

JUAN JOSÉ SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Baldock,* and Thompson,
Circuit Judges.

Liza L. Rosado-Rodríguez, Research and Writing Specialist, with whom Héctor E. Guzmán-Silva, Federal Public Defender, and Héctor L. Ramos Vega, Assistant Federal Public Defender, were on brief, for appellant.
Juan Carlos Reyes-Ramos, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division were on brief, for appellee.

September 12, 2014

---

*Of the Tenth Circuit, sitting by designation.

**THOMPSON, Circuit Judge**.  Defendant Juan José Santiago was sentenced to twelve months in prison and ten years supervised release after pleading guilty to one count of failing to register as a sex offender.  The terms of Santiago's supervised release included a series of special sex offender conditions, which he now seeks to vacate.  There is merit to some, but not all, of Santiago's claims of error.  In short, while a waiver of appeal serves to defeat the bulk of Santiago's challenges, we vacate one of the conditions of supervised release, which was imposed in Santiago's absence.

## I. The Start of Things

Santiago's story, inasmuch as it is relevant to this appeal, begins over a decade ago in Florida.  On March 19, 2002, a Mulberry, Florida police detective responded to a hospital emergency room for the reported rape of a seven-year-old girl.  The girl's mother, who was Santiago's girlfriend at the time, told the detective that the girl had said that "her daddy," referring to Santiago, "had touched her privates."[1]  Two days later, the girl was interviewed by the Florida Department of Health's Child Protection Team.  She told them that "her daddy would take her and his pants off, would get on top of her and move around like in the movies she had seen with him" and that "he touched and licked her

_____

[1] In her statements, the girl refers to Santiago as daddy, though the record contains no indication that he is her biological father, nor that Santiago and her mother were ever married.

privates." Santiago's girlfriend confirmed that there were two pornographic videos in the couple's night stand and consented to a search, which turned up both videos. Santiago was arrested.

Santiago was charged, under Florida law, with one count of sexual battery on a person less than twelve years of age, and one count of lewd molestation. The sexual battery charge was later reduced to child abuse. Santiago pleaded <u>nolo</u> <u>contendre</u> to both the lewd molestation and the child abuse charge. On July 19, 2002, Santiago was sentenced to five years of probation for the child abuse charge, and ten years of probation for the lewd molestation charge, to be served concurrently. Pursuant to the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 16913, Santiago was required to register as a sex offender, and keep his registration current, in all jurisdictions where he resided.

Over the next couple of years, Santiago repeatedly had trouble abiding by the terms of his probation. First, in July 2003, Santiago missed his court ordered curfew; an arrest warrant was issued, but later withdrawn. A year or so later, in September 2004, Santiago moved from his approved residence to another residence without prior permission from his probation officer, and failed to pay his monthly cost of supervision. Santiago admitted to the violations, and served forty-five days in county jail. Upon release, his probation was restored.

-3-

The stint in county jail did little to improve Santiago's compliance. Shortly after his release, in November 2004, an arrest warrant issued because Santiago had failed to register as a sex offender, neglected to report to the probation office, and had not paid court costs. A few weeks later, Santiago's probation officer reported additional violations: Santiago had once again moved from his approved residence without prior approval, had failed to successfully complete his sex offender treatment program, and had failed to pay court costs and restitution.

Having exhausted the system's goodwill, Santiago had his probation revoked on August 11, 2005. He was sentenced to just over seven years in Florida state prison for the child abuse charge, and five years for the lewd molestation charge, to be served concurrently. Santiago was released from prison on November 21, 2010. At some point following his release, Santiago moved from Florida to Puerto Rico.

## II. The Instant Offense

Once in Puerto Rico, Santiago again failed to register as a sex offender. Law enforcement caught up with him and, on April 3, 2012, a federal grand jury indicted Santiago on one count of violating 18 U.S.C. § 2250 for traveling through interstate commerce and knowingly failing to register with Puerto Rico authorities as required by SORNA.

Santiago decided to work with the government and he entered into a plea agreement. The agreement indicated that the Sentencing Guidelines yielded a recommended sentence of twelve to eighteen months, and that the government, in exchange for a guilty plea, would be satisfied with the bottom end of that range. The agreement also noted that the penalty for the offense charged included a term of supervised release that could range from five years to life. Pertinent to our purposes, the plea agreement contained a waiver of appeal provision, which provided that should the court accept the agreement and sentence Santiago according to its terms, Santiago would be "waiv[ing] and permanently surrender[ing] his right to appeal the judgment and sentence in this case."

At the change of plea hearing, the magistrate judge explained to Santiago the implications of the plea agreement, including the fact that Santiago would be giving up his right to appeal the judgment and sentence. She also explained the penalties he faced, noting the applicable term of supervised release and the fact that Santiago's release would be subject to some conditions. Santiago confirmed that he understood, and his attorney vouched for Santiago's competence to enter into the plea agreement. The court accepted Santiago's guilty plea; only sentencing considerations remained.

On December 6, 2012, the probation office issued its presentence investigation report (PSR). The PSR recommended (in addition to less relevant things) that a variety of special sex offender conditions be imposed, which generally speaking placed limitations on Santiago's contact with minors and required sex offender treatment with compliance monitoring.

Santiago's sentencing hearing took place on January 4, 2013. After some skirmishing not relevant to this appeal, the district court judge sentenced Santiago to twelve months in prison followed by a ten-year term of supervised release. In accord with the PSR's recommendation, the judge, at the hearing, imposed a number of special sex offender conditions as terms of Santiago's supervised release. The court inflicted the conditions over the objection of Santiago's attorney, who argued that the record was bereft of any justification for such conditions.[2] The judge disagreed, finding the fact that Santiago had pleaded <u>nolo contendre</u> to lewd molestation of his then-girlfriend's daughter in 2002 sufficient to warrant the special conditions.

The court issued its written judgment the same day as the sentencing hearing. In addition to the special sex offender

---

[2] The government, for its part, was ambivalent at first, stating a preference for leaving the issue of the special conditions up to the court's discretion. When pressed by the sentencing judge, the government attorney stated that the government did not think special sex offender conditions needed to be imposed at that time.

conditions announced at the hearing, the judgment contained one additional condition, numbered thirteen in the judgment, which provided that Santiago could not use or possess sexually explicit material or frequent any establishments providing pornography or sexual services.

### III. This Appeal

Santiago comes to us with a circumscribed advancement. He does not challenge his sentence, his term of supervised release, or the general conditions of that release. Rather he solely takes issue with some of the special sex offender conditions imposed by the district court.

First, he claims that a handful of the conditions were unwarranted because they were not reasonably related to his failure to register (which is not a sex offense) or any of the overarching goals of supervised release. The disputed conditions can be summarized as follows. Santiago must: (1) have no unapproved contact via mail, phone, or electronically with minors; (2) undergo sex offender evaluation and treatment; (3) avoid entering, loitering, or working near any areas frequented by minors without probation's approval; (4) not live near any area frequented by minors; and finally (5) refrain from living with minors unless probation gives the okay.[3] Next, Santiago argues that condition

---

[3] At his sentencing hearing, Santiago was particularly concerned with the conditions that prohibited him from living with, or coming in contact with, minors because at the time he had

thirteen of the judgment (recall this was the condition relating to sexually explicit materials and establishments), in addition to not being justified, was in violation of his right to be present because it was not announced at his sentencing hearing.

The government does not think we need to reach the merits of either claim. It retorts that pursuant to the waiver of appeal provision in his plea agreement, Santiago gave up his right to appeal his sentence, including the special terms of his supervised release.

The multiple special sex offender conditions that Santiago claims were baseless given the circumstances, and the unannounced condition thirteen, suggest distinctive concerns. And ultimately they require different results. As such, we take them independently.

## IV. The Supposed Unwarranted Conditions

With respect to the conditions Santiago claims were groundless, our inquiry, as the government suggests, starts and ends with the waiver of appeal contained in Santiago's plea agreement. Santiago does not dispute that because he was sentenced in accordance with the plea agreement he is precluded by the waiver from appealing his term of imprisonment. Rather, he attempts to draw a distinction between the twelve-month prison term and his

---

several minor children in his family, including a child of his own and his girlfriend's children.

supervised release conditions. Because, he says, the plea agreement was silent as to which conditions of supervision were to be imposed, and it did not make any recommendation one way or the other, the conditions fall outside the waiver's scope. Our jurisprudence is at odds with Santiago's position.

The waiver at issue here explicitly stated that Santiago was giving up "his right to appeal the judgment and <u>sentence</u> in this case." (Emphasis added.) Significantly, a supervised release term is part of a sentence. <u>See</u> <u>United States</u> v. <u>Brown</u>, 235 F.3d 2, 4 (1st Cir. 2000) (providing that a "supervised release term is an integral part of a sentence" and that a defendant can rarely claim unfair surprise when the resultant conditions of supervised release are imposed); <u>United States</u> v. <u>Mandarelli</u>, 982 F.2d 11, 12 (1st Cir. 1992) (Breyer, J.) ("Supervised release is part of a prison sentence, to be served <u>after</u> imprisonment.") (internal quotation marks omitted) (emphasis in original); 18 U.S.C. § 3583 ("The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as part of the sentence a requirement that the defendant be placed on a term of supervised release.").

Consistent with this prescript, we have routinely applied appellate waivers to preclude defendants from appealing their conditions of supervised release, where the waiver extended to the defendant's power to appeal the judgment and sentence. <u>See</u> <u>United</u>

States v. Rodríguez-Santana, 554 F.App'x. 23, 26 (1st Cir. 2014) (defendant could not appeal special sex offender conditions in light of appellate waiver); United States v. Rivera-López, 736 F.3d 633, 637 (1st Cir. 2013)(waiver of appeal precluded this court from reviewing defendant's nightly curfew and electronic monitoring conditions); United States v. Nguyen, 618 F.3d 72, 76 (1st Cir. 2010) (finding appellate review of a drug testing condition foreclosed by a waiver of appeal).  As we said in Rodríguez-Santana, while addressing special sex offender conditions not unlike the ones Santiago challenges here, "'[a] supervised release term is an integral part of a sentence' generally encompassed within any broadly-worded agreement not to appeal a 'sentence.'" 554 F.App'x at 25 (quoting Brown, 235 F.3d at 4).

Given all this, we have no trouble concluding that the word "sentence" in Santiago's waiver encompasses every component of the sentence, including the term of supervised release and its attendant conditions, thus bringing the instant action within the waiver's reach.  Having established the waiver's scope does not, however, bring things to an end.  The question of enforcement of the waiver remains.  The general rule is that when knowing and voluntary, an appellate waiver is generally enforceable, absent an indication that the waiver would work a miscarriage of justice. Rivera-López,736 F.3d at 635;  United States v. Teeter, 257 F.3d 14, 24-26 (1st Cir. 2001).

-10-

To assess how well-informed Santiago's waiver was we look to the plea agreement and the change-of-plea colloquy. See Teeter, 257 F.3d at 24. The plea agreement contained a clearly worded "waiver of appeal," which explicitly stated that Santiago was giving up his right to appeal the judgment and sentence should the court accept, and sentence him in accord with, the plea agreement. The plea agreement set forth both the potential term of incarceration, and the term of supervised release, faced by Santiago. At the change of plea hearing, the magistrate judge clearly explained to Santiago the implications of his entering into this agreement. She articulated the maximum penalties for the crime, including the applicable term of supervised release, and then explained that this term would be subject to "some conditions," and that, should Santiago violate those conditions, he would "go back to jail for the full term." Santiago confirmed that he understood. The judge also informed Santiago that, by virtue of the waiver of appeal provision, he was "giv[ing] up [his] right to appeal both the judgment and . . . sentence." Again, Santiago understood. Santiago's attorney indicated that she had gone over the plea agreement with him, including the rights he would be relinquishing. She described their conversations as "above-average" and "intelligent." The magistrate judge found, and Santiago's attorney confirmed, that Santiago was competent to enter the plea.

Taking into consideration the exchange at the change of plea hearing and the language of the waiver itself, it is apparent that Santiago's relinquishing of his appellate rights was knowing and voluntary.  The waiver of appeal itself was unambiguous and the judge sufficiently called the waiver to Santiago's attention while making sure he understood its ramifications.  The fact that the plea agreement does not specify Santiago's conditions of supervised release is inconsequential; a defendant need only understand how the right he is giving up would likely apply in the general sense, rather than the specific consequences of invoking it.  See Rodríguez-Santana, 554 F.App'x at 25 (citing United States v. Ruiz, 536 U.S. 622, 629 (2002)).

That leaves Santiago with just one more shot at sidestepping the waiver of appeal.  And it is not a task easily accomplished.  In our "sound discretion," we may refuse to honor the appellate waiver if denying Santiago a right of appeal would result in a "miscarriage of justice."  Teeter, 257 F.3d at 25.  This "exception is meant only for 'egregious cases' and is to be applied 'sparingly and without undue generosity.'" Sotirion v. United States, 617 F.3d 27, 36 (1st Cir. 2010)(quoting Teeter, 257 F.3d at 25, 26).

Aware (by his own admission) of the difficulty of establishing a miscarriage of justice, Santiago devotes little time to this issue on appeal.  He only argues that "it would be

unreasonable to expect him to anticipate special conditions at the time he waived his right to appeal" because he "was not warned by the district court of the possibility of receiving harsh sex offender conditions of supervised release."  This offering falls short.   To successfully invoke the miscarriage of justice exception, a "garden-variety error will not suffice," rather there must be, "at a bare minimum, an increment of error more glaring than routine reversible error."  United States v. Chambers, 710 F.3d 23, 31 (1st Cir. 2013) (internal quotation marks omitted).  No such error - garden variety or otherwise - invaded the proceedings here.

"Under ordinary circumstances, the district court has significant discretion in formulating conditions of supervised release."  Nguyen, 618 F.3d at 76.  The conditions must just be reasonably related to one or more of the goals of supervised release, i.e., the nature and circumstances of the offense and the history and characteristics of the defendant, the need to deter criminal conduct, the need to protect the public, and the needed training, care, or treatment of the defendant.  See Rivera-López, 736 F.3d at 635 (citing U.S.S.G. § 5D1.3(b); 18 U.S.C. 3583(d)).  At the same time, the conditions must "involve[] no greater deprivation of liberty than is reasonably necessary."  18 U.S.C. § 3583(d)(2).  With respect to conditions of supervised release, the "hallmark" that separates the permissible from the impermissible is

-13-

whether, given the facts, a certain restriction was "clearly unnecessary." Brown, 235 F.3d at 7.

While the conditions imposed on Santiago were undoubtedly stringent, especially since the underlying offense was not a sexual one, the conditions were not so obviously unwarranted as to constitute a miscarriage of justice. Santiago plead nolo contendre to lewd molestation in 2002. Since then, he violated the terms of his probation several times, and, in violation of SORNA, failed to register as a sex offender in two jurisdictions. At the time the court imposed the disputed conditions, Santiago's living arrangements mirrored those from when the 2002 offense occurred, in that he was living in a home with his girlfriend and her minor children. Couple this fact with Santiago's apparent inability to abide by (or blatant disregard of) the terms of his probation, his failure to register as a sex offender on more than one occasion, and the well-recognized high recidivism rate for sex offenders, see Smith v. Doe, 538 U.S. 84, 103 (2003); United States v. Sebastian, 612 F.3d 47, 51 (1st Cir. 2010), the district court's determination that special sex offender conditions were necessary to further the goals of supervised release (most fitting, the protection of the public) was hardly unsubstantiated.

Nor are we persuaded by Santiago's avowal that it was unforeseeable to him that special sex offender conditions might be imposed. Santiago was well aware of his criminal past, his

subsequent probation violations, and his inattention to his sex offender registration requirements.  Had Santiago wanted more of an indication as to whether special conditions related to his status as a sex offender might be imposed, he could have requested the PSR, which ultimately recommended a number of such conditions, prior to entering a guilty plea.  See United States v. Donath, 616 F.3d 80, 84-85 (1st Cir. 2010) (noting, in  connection with a finding that no miscarriage of justice occurred, that the defendant could have requested a PSR prior to waiving his right to appeal in order to assess how his past convictions would be treated).

Whether Santiago's special sex offender conditions would stand firm against scrutiny on direct appeal is not something we need to get into.  We need only answer "the much simpler question of whether the conditions are so clearly erroneous and unsubstantiated as to work a miscarriage of justice."  Rivera-López, 736 F.3d at 637.  Because they are not, Santiago must be held to his waiver of appeal as to those conditions.  Condition thirteen is a different story.

## V. Condition Thirteen

To remind the reader, condition thirteen of the judgment (generally speaking) required Santiago to refrain from using sexually explicit material, or frequenting establishments providing pornography or sexual services.  How the condition was imposed is important.  Condition thirteen, unlike all the other special sex

-15-

offender conditions, was not announced by the judge at Santiago's sentencing hearing. Instead it made its first appearance in the written judgment. Because of this, Santiago claims his right to be present at sentencing was violated. Off the bat we need to consider how the manner in which the condition was inflicted impacts the applicability of Santiago's waiver of appeal.

It is well settled that a criminal defendant, by virtue of the United States Constitution and Federal Rules of Criminal Procedure, enjoys the right to be present at his own sentencing. United States v. Bryant, 643 F.3d 28, 32 (1st Cir. 2011); United States v. Sepúlveda-Contreras, 466 F.3d 166, 169 (1st Cir. 2006). Obviously, with respect to condition thirteen, that tenet was not complied with. As explained above, it is within our choosing to refuse to honor an appellate waiver if doing so would result in a "miscarriage of justice." Teeter, 257 F.3d at 25. Miscarriage of justice is "more a concept than a constant" and the circumstances that will justify invoking it are "infinitely variable." Id. at 25, n.9; 26. Such factors may or may not be related to the waiver itself, Nguyen, 618 F.3d at 75, and could include "the clarity of the error, its gravity, its character . . . the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Teeter, 257 F.3d at 26.

Relief under the miscarriage of justice exception is often sought but seldom meted out. That being said, we think this case is more the exception than the norm and enforcing Santiago's waiver as to condition thirteen would work a miscarriage of justice. First, the error here is clear. Supervised release conditions not announced at sentencing should not make a surprise appearance in the written judgment. See, e.g., Sepúlveda-Contreras, 466 F.3d at 169; United States v. Vega-Ortiz, 425 F.3d 20, 22 (1st Cir. 2005). Further, the error has significance, most notably its constitutional dimensions. See, e.g., Teeter, 257 F.3d at 25, n.9 (citing an appellant's claim that his sentence was based on a constitutionally impermissible factor as an example of a case where the court might set aside a waiver). The impact on Santiago is apparent. He had a restrictive condition imposed without the opportunity to argue that it was not warranted, and there is no claim that he acquiesced to this result. Finally, we see little prejudice to the government should we take up the merits of Santiago's (very limited) appeal given that the government fully briefed this issue.

That stumbling block out of the way, we move on to the merits. We review Santiago's claim for harmless error. See Sepúlveda-Contreras, 466 F.3d at 170; United States v. Ortiz-Torres, 449 F.3d 61, 74 (1st Cir. 2006). In the case of right-to-be-present challenges based on a sentencing court's inclusion of

conditions of supervised release in the judgment that were not announced at sentencing, the oral conditions control where those conditions "conflict in a material way" with the conditions that ended up in the judgment. Sepúlveda-Contreras, 466 F.3d at 169. There will be no material conflict "where the defendant is on notice that he is subject to the terms included in the written judgment." Ortiz-Torres, 449 F.3d at 74.

The government concedes that because condition thirteen was a non-mandatory, non-standard condition, Santiago is not presumed to have been on constructive notice of the condition. See Sepúlveda-Contreras, 466 F.3d at 169-70 (explaining that "[d]efendants are deemed to be on constructive notice for mandatory and standard conditions"). Nonetheless, the government insists we should find that Santiago was in fact on constructive notice that condition thirteen would be imposed given that his victim from the 2002 offense alleged that she and Santiago watched pornography together and two pornographic videos were recovered by police. We are not persuaded.

Here, there is clearly a conflict between the terms of supervised release issued orally by the judge, and those contained in the written judgment. Moreover, there is no evidence that Santiago was on notice that a term of supervised release akin to condition thirteen would be imposed. Unlike the other special sex offender conditions, condition thirteen was not recommended in the

-18-

PSR.  And we disagree with the government that the fact that pornography viewing was reported by his minor victim in 2002 should have put Santiago on constructive notice that he would be precluded from using or possessing sexually explicit material or frequenting providers of such material in 2013.  We conclude that the court erred in imposing condition thirteen for the first time in the written judgment; the question remains whether the error was harmless.

Since the error alleged is a constitutional one, "the government has the burden of proving beyond a reasonable doubt that the error did not affect the defendant's substantial rights."  Id. at 171.  In the context of Santiago's case, this means the government must establish that Santiago's ability to object was not compromised, that is, the condition would have been imposed even if he was present.  See id. at 171-72.  The government has not done this.  All it did was point us to the fact that the district court judge was unconvinced by Santiago's attorney's argument at the sentencing hearing that the announced special sex offender conditions were unwarranted.  This brief colloquy between the judge and the attorney does not leave us convinced beyond a reasonable doubt that condition thirteen would have been imposed had Santiago been given the opportunity to object.  Consequently, we must vacate condition thirteen.

## VI. Conclusion

Because Santiago waived his right to appeal all of the special sex offender conditions of supervised release, save condition thirteen, we dismiss that portion of the appeal. Condition thirteen, however, cannot stand. It is vacated and we remand to the district court for re-sentencing consistent with this opinion.

DISMISSED IN PART, VACATED IN PART, AND REMANDED.