# United States Court of Appeals
## For the First Circuit

No. 14-1929

UNITED STATES OF AMERICA,

Appellee,

v.

HAINZE ELÍAS DÍAZ-ARROYO,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]


Before

Torruella, Selya and Dyk,*
Circuit Judges.

Steven A. Feldman and Feldman and Feldman on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Carmen M. Márquez-Marín, Assistant United States Attorney, on brief for appellee.

August 12, 2015


---

* Of the Federal Circuit, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  In this sentencing appeal, defendant-appellant Hainze Elías Díaz-Arroyo complains that his 48-month sentence is substantively unreasonable and that a condition of supervised release fails to make clear that he is not prohibited from using the internet.  After careful consideration, we affirm the sentence itself but remand for the limited purpose of correcting the judgment to clarify the challenged supervised release condition.

## <u>I.</u>

### BACKGROUND

As this appeal follows a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  <u>See</u> <u>United States</u> v. <u>Rivera-González</u>, 776 F.3d 45, 47 (1st Cir. 2015); <u>United States</u> v. <u>Dávila-González</u>, 595 F.3d 42, 45 (1st Cir. 2010).  In January of 2014, a Puerto Rico police officer spied the defendant pulling a firearm from his waistband in the vicinity of a public housing project.  The defendant attempted to flee on foot (losing a black wig in the process) but was eventually apprehended.  He admitted that he had been wearing the wig to disguise himself as he knew there was an outstanding arrest warrant against him on homicide charges. During a search incident to his arrest, the police found a container of marijuana, a stolen 40-caliber Glock pistol loaded with 13 rounds

- 2 -

of ammunition, and a magazine loaded with 12 rounds of 40-caliber ammunition.

In due course, a federal grand jury sitting in the District of Puerto Rico returned an indictment charging the defendant with being a felon in possession of a firearm. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). This charge carries a maximum prison sentence of 10 years. See id. § 924(a)(2).

After some preliminary skirmishing (not relevant here), the defendant entered into a non-binding plea agreement with the government (the Agreement). See Fed. R. Crim. P. 11(c)(1)(B). In the Agreement, the defendant agreed to request a sentence no lower than the bottom of the applicable guideline sentencing range (GSR) while the government agreed to recommend a sentence no higher than the top of the range. Withal, the Agreement reached no consensus about the defendant's criminal history category (CHC), although it did forecast a possible GSR based on a CHC of II.

After the district court accepted the defendant's guilty plea, it directed the preparation of the PSI Report. The PSI Report adumbrated a series of guideline calculations. Starting with a base offense level of 14, see USSG §2K2.1(a)(6), it suggested a two-level upward adjustment because the firearm was stolen, see id. §2K2.1(b)(4)(A), and a three-level downward adjustment for timely acceptance of responsibility, see id. §3E1.1(a), (b), yielding a total offense level of 13. The PSI

Report then proposed a CHC of II because the defendant had previously been convicted of three counts of possession of a firearm without a license, and he was on probation for those crimes when he committed the instant offense. Cumulatively, these computations produced a recommended GSR of 15 to 21 months.

The PSI Report went on to note that the defendant's criminal past included two separate incidents for which he was not convicted (and, thus, for which no criminal history points were assessed). In 2012, he was arrested for possessing false documents and pointing a firearm at a law enforcement officer. These charges were eventually dismissed due to a reported lack of probable cause. In 2014, the defendant was again arrested; this time he was charged with causing the death of two men and attempting to murder a third with a firearm. These charges were also dismissed, but the PSI Report was silent as to the reason for the dismissal.

At the disposition hearing, the district court — without objection — adopted the guideline calculations limned in the PSI Report. Defense counsel requested a bottom-of-the-range sentence (15 months). The prosecutor recommended a top-of-the-range sentence (21 months). As part of her statement to the court, the prosecutor explained that the 2014 murder and attempted murder charges were dropped only after the sole surviving witness to the incident (a minor who was able positively to identify the defendant as the shooter) was threatened and fled the jurisdiction. Defense

- 4 -

counsel did not strongly deny the prosecutor's account, stating that the defendant maintained his innocence with respect to those charges, and adding, ambiguously, that the defendant had "no relation to that." Defense counsel went on to say that she understood that the charges had been dropped because the witness had been in witness protection and did not appear to testify.

The district court noted that it had considered all of the factors enumerated in 18 U.S.C. § 3553(a). It specifically acknowledged the Agreement, the defendant's criminal history (including the dismissed charges), his age, his family and employment status, his history of drug abuse, and the circumstances surrounding the offense of conviction. The court then mentioned the high incidence of violent crime in Puerto Rico[1] and decried the fact that "[t]oo many young men on this island are carrying dangerous weapons without the proper training to use them and without the finances to purchase them." Stressing, inter alia, the defendant's prior weapons convictions and the dropped murder/attempted murder charges, the court concluded that an upwardly variant sentence was necessary to "reflect[] the seriousness of the offense, promote[] respect for the law, [and] protect[] the public from further crimes by [the defendant]." The court then sentenced the defendant to serve 48 months in prison

---

[1] Among other things, the court observed that the crime rate in Puerto Rico "is about quadruple the national rate."

- 5 -

(consecutive to any sentence imposed in the then-pending Commonwealth probation revocation proceedings), followed by a three-year term of supervised release. No objections were made either to the sentence or to the supervised release conditions.

In setting forth the conditions of supervised release, the court required the defendant, inter alia, to comply with electronic monitoring strictures. In so doing, the court stated: "[i]n addition to any telephone or cell phone that he may have, [the defendant] shall maintain a telephone at his residence without a modem, an answering machine or a cordless feature during the term of electronic monitoring."

This timely appeal ensued.

## II.

### ANALYSIS

On appeal, the defendant raises three issues. We discuss those issues sequentially.

### A.

To begin, the defendant argues that the waiver-of-appeal clause contained in the Agreement does not pretermit his appeal. That argument, however, sets up a straw man.

In so many words, the waiver-of-appeal clause hinges the defendant's waiver on the subsequent imposition of a sentence "in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of [the Agreement]." Because the

- 6 -

sentence imposed by the district court was beyond the bounds of the Agreement's Sentence Recommendation provisions, the waiver-of-appeal clause does not apply. See, e.g., Rivera-González, 776 F.3d at 49. And the government, to its credit, has conceded the point all along.

## B.

The centerpiece of this appeal is the defendant's contention that the sentence imposed by the district court is substantively unreasonable. Since the defendant did not object below, the standard of review is open to question. We have recently explained that most courts have held that an objection in the district court is not necessary to preserve a claim that the length of a sentence is substantively unreasonable. See United States v. Vargas-García, ___ F.3d ___, ___ (1st Cir. 2015) [No. 14-1335, slip op. at 8]; United States v. Ruiz-Huertas, ___ F.3d ___, ___ (1st Cir. 2015) [No. 14-1038, slip op. at 10]. Nevertheless, "a pair of First Circuit cases have expressed a contrary view (albeit without any analysis of the issue)." Vargas-García, ___ F.3d at ___ [slip op. at 8] (citing Ruiz-Huertas, ___ F.3d at ___ n.4 [slip op. at 10 n.4]). Here, though, we can follow the same path that we took in both Vargas-García and Ruiz-Huertas and leave the issue for another day. Thus, we assume, favorably to the defendant, that the abuse of discretion rubric applies.

In appraising the substantive reasonableness of a sentence, we first ask whether the district court has offered a plausible rationale for the sentence and then ask whether the sentence embodies a defensible result. See United States v. Flores-Machicote, 706 F.3d 16, 25 (1st Cir. 2013); United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008). Variant sentences are subject to this two-part inquiry. See United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014). Throughout, we remain mindful that where (as here) a properly calculated GSR is in place, "sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." Martin, 520 F.3d at 92 (internal quotation marks omitted).

In the case at hand, the defendant contests both parts of the two-part inquiry. He begins by denigrating the district court's rationale because (in his view) the court premised its sentencing determination on two factors "beyond his control," namely, the crime rate in Puerto Rico and the charges against him that were later dismissed. Although the defendant concedes that each of these factors is a permissible consideration at sentencing, he submits that the court below erred in relying on them in combination.

We discern no abuse of the sentencing court's broad discretion. As we repeatedly have explained, "[d]eterrence is

widely recognized as an important factor in the sentencing calculus." Flores-Machicote, 706 F.3d at 23; accord United States v. Romero-Galindez, 782 F.3d 63, 73 (1st Cir. 2015). To this end, a sentencing court may consider the pervasiveness of similar crimes in the community in formulating its sentence. See, e.g., United States v. Narváez-Soto, 773 F.3d 282, 286 (1st Cir. 2014); United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008). So, too, the fact that a defendant's CHC substantially underrepresents the gravity of his prior criminal history because of previously dismissed charges may shed light upon the need for specific deterrence. See, e.g., Flores-Machicote, 706 F.3d at 21 (explaining that "[a] record of past arrests or dismissed charges may indicate a pattern of unlawful behavior even in the absence of any convictions" (internal quotation marks omitted)); United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir. 2012) (similar); United States v. Gallardo-Ortiz, 666 F.3d 808, 814-15 (1st Cir. 2012) (similar); cf. USSG §4A1.3(a)(2)(E) (authorizing upward departures based on reliable information that defendant committed "[p]rior similar adult criminal conduct not resulting in a criminal conviction"). We know of no reason why these two sentencing considerations, each of which is proper, cannot be used synergistically in fashioning a sentencing rationale.

We add, moreover, that the district court's sentencing rationale was altogether plausible. The court gave several reasons

for imposing a sentence above the GSR, including the need for deterrence in view of the defendant's demonstrated proclivity for committing firearms offenses (as shown in part by his many prior weapons-related brushes with the law).[2]  The court then voiced its concern that no sentence within the GSR would appropriately "address the issues of deterrence and punishment."  Given the amalgam of convicted and dismissed firearms-related charges reflected in the record — which show "a pattern of unlawful behavior even in the absence of [corresponding] convictions," Lozada-Aponte, 689 F.3d at 792 (quoting United States v. Zapete-Garcia, 447 F.3d 57, 61 (1st Cir. 2006)) — we find no lack of plausibility in the district court's sentencing rationale.[3]

---

[2] In this regard, the court emphasized the need for the sentence imposed both to deter the defendant and to serve the purpose of general deterrence in the population at large.

[3] We note that the sentencing court was entitled to take into account the prosecutor's representations at the disposition hearing regarding the circumstances surrounding the 2014 murder/attempted murder charges to shed light on the reason for the dismissal of those charges.  The prosecutor stated that the victim of the attempted murder (who was the sole eyewitness) fled the jurisdiction because he "was threatened."  Defense counsel did not directly challenge the prosecutor's account of the circumstances surrounding the dismissal of the charges.  At sentencing, a court is not bound by the rules of evidence but, rather, may take into account any information that has sufficient indicia of reliability.  See United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992); USSG §6A1.3(a).  For sentencing purposes, a prosecutor's statement, not adequately challenged by defense counsel who has a full opportunity to respond, may constitute reliable information.

Nor do we find that the sentence embodies an indefensible result. We recognize, of course, that the district court's duty is to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the manifold goals of sentencing. 18 U.S.C. § 3553(a). Still, "[i]n most cases, there is not a single appropriate sentence but, rather, a universe of reasonable sentences." Rivera-González, 776 F.3d at 52. We conclude that the upwardly variant sentence here falls near the outer margin of, but within, that universe.

To be sure, the sentence is severe — but not unreasonably so. The offense of conviction was serious; it involved a stolen firearm; and it was aggravated both by the defendant's possession of an additional (loaded) magazine and by his flight. Moreover, the defendant committed the offense while on probation for an earlier weapons charge. When the facts of this case are viewed against the backdrop of the defendant's checkered criminal history and the community's burgeoning problems with violent crime linked to the illegal possession and use of firearms, we cannot say that the sentence was outside the wide universe of permissible sentences.

## C.

The district court imposed, inter alia, a special condition of supervised release designed to ensure the efficacy of electronic monitoring: it required that the defendant maintain a

"clean" telephone line, sans modem, in his home.  The defendant's final claim of error posits that this condition, as phrased in the written judgment, fails to make clear that the condition was not intended to prohibit him from accessing the internet.[4]

We start our appraisal of this claim by noting that such a supervised release condition normally should not be construed to bar internet access.  In reviewing a substantially similar supervised release condition in an earlier case, we explained that such a condition "affirmatively commands one particular action (i.e., the maintenance of a certain type of phone line), but does not expressly prohibit any other, including that of accessing the internet from home."  United States v. Rivera-López, 736 F.3d 633, 634 n.1 (1st Cir. 2013).  Here, however, there is a problem with the wording of the written supervised release condition.

In Rivera-López, we cautioned district courts to take care in the use of language so as to make clear that the condition of maintaining a telephone line sans modem is not a prohibition on all internet usage.  See id.  The court below complied in part with this admonition: when it announced the condition from the bench at the disposition hearing, it began with the qualifying phrase, "[i]n addition to any telephone or cell phone that he may

---

[4] The condition in the written judgment provided: "[The defendant] shall maintain a telephone at his place of residence without any special features, modems, answering machines, or cordless telephones during the term of electronic monitoring."

have. . . ." But in the written judgment, this qualifying language was inexplicably omitted, and the written condition was substantially similar to, if not less clear than, the condition that we found suspect in Rivera-López. The result is that the written judgment contains the very ambiguity against which the Rivera-López court warned.

This oversight is easily corrected. We direct the district court, on remand, to correct the judgment so that the language of the challenged supervised release condition makes clear that there is no prohibition on the defendant's access to the internet.

## III.

### CONCLUSION

We need go no further. For the reasons elucidated above, we affirm the sentence but remand the case with directions to correct the challenged supervised release condition.

**So ordered.**