# United States Court of Appeals
## For the First Circuit

No. 15-1337

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN CABRERA-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, <u>Chief U.S. District Judge</u>]

Before

Torruella, Lynch, and Lipez,
<u>Circuit Judges</u>.

<u>Julie K. Connolly</u>, with whom <u>Julie Connolly Law, PLLC</u> was on brief, for appellant.
<u>Julia M. Meconiates</u>, Assistant United States Attorney, with whom <u>Rosa Emilia Rodríguez-Vélez</u>, United States Attorney, and <u>Thomas F. Klumper</u>, Assistant United States Attorney, Acting Chief, Appellate Division, were on brief, for appellee.

June 20, 2018

**LIPEZ**, **Circuit Judge**.  Appellant Edwin Cabrera-Rivera ("Cabrera") was charged in a two-count indictment with production and possession of child pornography.  In a deal with the government, he agreed to plead guilty to the possession count -- an offense with no mandatory minimum sentence -- and the government agreed to dismiss the production count -- an offense with a mandatory fifteen-year term of imprisonment.  As part of the deal, the parties agreed to recommend a term of 108 months of imprisonment.  Cabrera also agreed to waive his right to appeal any sentence consistent with the parties' recommendation.  The district court adopted the joint recommendation and sentenced Cabrera to the 108-month term.  The court also sentenced Cabrera to a 144-month term of supervised release with multiple conditions.

Cabrera now challenges the length of his terms of imprisonment and supervised release and several of the supervised release conditions, contending that his appeal waiver was not made knowingly and voluntarily, or, in the alternative, that enforcing the waiver would result in a miscarriage of justice.  After considering these arguments, we dismiss Cabrera's appeal of his terms of imprisonment and supervised release, as well as his objections to most of the supervised release conditions.  The one exception is for a condition that, by its terms, prevents Cabrera from having any contact with his minor children without approval of a probation officer.  Thus stated, the condition implicates

Cabrera's fundamental constitutional interest in his relationship with his children, and it was imposed without any explanation of its necessity.  We vacate that condition and direct the district court to reconsider it on remand.

**I.**

Because Cabrera's conviction and sentence followed the entry of a guilty plea, we draw the facts from the change-of-plea colloquy and the uncontested portions of the amended Presentence Investigation Report ("PSR").  See United States v. Vélez-Luciano, 814 F.3d 553, 556 (1st Cir. 2016).  In 2012, Cabrera, then twenty-five years old, worked for an electrical contractor in Barranquitas, Puerto Rico.  Jane Doe ("Doe"), a sixteen-year-old female, lived not far from Cabrera's place of work.  At some point during that year, Cabrera and Doe began spending time together.  Although the parties strenuously disagree about the nature of Cabrera and Doe's relationship -- a matter we discuss in more detail below -- they do not dispute that Cabrera encouraged Doe to take sexually explicit photos of herself with a cellphone and send them to him.

In January 2013, Department of Homeland Security agents received information that Cabrera had engaged in sexually explicit communications with Doe.  The agents subsequently interviewed Doe and learned that Cabrera had asked Doe to send him approximately fifty-eight sexually explicit photos of herself.  The agents

- 3 -

interviewed Cabrera, who admitted that he had requested the photos. The government then lawfully searched two cellphones owned by Cabrera and found sexually explicit photos of Doe.

Cabrera subsequently was indicted on one count of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Cabrera and the government agreed that he would plead guilty to the possession count in exchange for dismissal of the production count. The plea agreement included a joint recommendation that Cabrera receive a 108-month term of imprisonment, but it included no recommendations regarding the duration or conditions of Cabrera's supervised release term. Under a section titled "Maximum Penalties," the agreement stated that Cabrera faced a prison term of no more than ten years and also noted -- incorrectly, it turned out -- that Cabrera was subject to a supervised release term of no more than three years. The plea agreement also included a "Waiver of Appeal" provision, in which Cabrera gave up his right to appeal his conviction and sentence if the sentence imposed was consistent with the parties' recommendation.

At a change-of-plea hearing before a magistrate judge, the government reviewed the terms of the plea agreement, all of which Cabrera said he understood. During the colloquy, however, the court questioned the provision stating that Cabrera's term of

supervised release would be "not more than three (3) years." After research by the prosecutor and defense counsel -- who looked up the relevant statutes on their cellphones -- all agreed that, pursuant to 18 U.S.C. § 3583(k), Cabrera faced a term of supervised release of "not less than 5 [years], or life."[1] The magistrate judge gave Cabrera and his counsel a moment to confer about the change, and the court then told Cabrera:

> Okay, Mr. Cabrera, that's what the law says. There is nothing your lawyer can do about it. I just need to make sure that you understand a possible maximum sentence and part of the maximum sentence could be a term of supervised release of up to life. Do you understand that?

Cabrera replied, "Yes."

After advising Cabrera that the sentencing judge would have considerable discretion in determining his sentence, the magistrate judge went on to explain the waiver of appeal provision: "your plea agreement contains a waiver of appeal in which you give up your right to appeal both the judgment and the sentence if the court accepts your plea agreement and sentences you according to its terms, conditions and recommendations. Do you know that?" Again, Cabrera responded, "Yes."

Upon completing the change-of-plea colloquy, the magistrate judge found that Cabrera was competent to plead guilty,

---

[1] During the change-of-plea hearing, this language, without our emphasis added, was handwritten as a correction on the plea agreement, and the change appears to be initialed by Cabrera.

he was aware of the nature of the charged conduct and the impact of pleading guilty, and his plea was knowing and voluntary. Hence, the magistrate judge recommended that the district court accept Cabrera's plea.

In its initial PSR, the Probation Office recommended a pair of two-point enhancements not contemplated by the plea agreement -- one for conduct involving the commission of a sexual act or sexual contact, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), and one for the use of a computer, pursuant to U.S.S.G. § 2G2.1(b)(6)(B). Cabrera objected to the enhancement for sexual contact, and an amended PSR was issued that omitted it. The amended PSR determined Cabrera's guideline sentencing range ("GSR") to be 108-120 months, based on a total offense level of 31 and a Criminal History Category ("CHC") of I. The amended PSR also recommended fifteen special conditions of supervised release. Cabrera did not object to any of them.

At sentencing in February 2015, defense counsel agreed with the guidelines calculation set out in the amended PSR and informed the court that she had discussed the report with Cabrera. After hearing from Cabrera, Doe, and Doe's mother, the court explained the factors specified by 18 U.S.C. § 3553(a) that it had considered,[2] and it concluded as follows:

---

[2] The court stated that it had considered the following factors: (1) Cabrera's age and tenth-grade education; (2) that he

- 6 -

> I hope not to be committing a mistake here. But at this time I will go with the recommendation of the government within the plea agreement. I find that still 9 years is a significant period of time and I hope that you use the same to continue reflecting on what you did. For you to realize that it doesn't matter whether the woman is the age of consent but you are not to engage in the type of actions that you engage.  You are not to take advantage of persons with learning disabilities, because that is still another enhancement.

Regarding Cabrera's supervised release term, the court stated:

> [T]he period of supervised release will be a significant one. In essence it will get to a point where if you do it right, if you restructure your life, if you don't give the Probation Officer any reason to believe that you are engaging in any similar action or in any other type of illegal action they will place you in minimal supervision.  But if you set a different course in life, then they will be able to act.

Accordingly, the court sentenced Cabrera to a 108-month term of imprisonment and a 144-month term of supervised release.  Then, without further explanation, the court imposed virtually all of the supervised release conditions included in the amended PSR, along with a few others.  The court also reminded Cabrera that, because he had "stipulated" to the sentence imposed, the waiver of

---

was in a long-term relationship and has two young children; (3) his status as a first-time offender; (4) his use of alcohol; (5) his stable employment and good conduct while at work; (6) letters of support from relatives, in-laws, and neighbors; (7) that he knew the victim was a minor; (8) that he had been in contact with the victim since 2012 and knew she was receiving psychological therapy; (9) that he taught the victim how to send the sexually explicit images; (10) that he admitted showing the images to his co-workers and that a co-worker had told him the images could lead to trouble; and (11) that he severely injured the victim's brother during a fight with her relatives.

appeal provision in the plea agreement "has been triggered." Cabrera timely appealed.

## II.

Cabrera seeks review of his sentence on two grounds. First, he argues that his appeal waiver should not be enforced because it was not made knowingly and voluntarily. Second, he argues that, even if the appeal waiver is valid, we should disregard it and vacate his sentence and six conditions of supervised release to prevent a miscarriage of justice.

To evaluate the enforceability of a defendant's waiver of appeal, we consider three questions: (1) was the waiver's scope clearly delineated? (2) did the district court specifically inquire about the waiver of appellate rights? and (3) would denial of those rights constitute a miscarriage of justice? See United States v. Del Valle-Cruz, 785 F.3d 48, 54 (1st Cir. 2015) (citing United States v. Teeter, 257 F.3d 14, 24-25 (1st Cir. 2001)). The first two prongs of what we have dubbed "the Teeter test" are designed to ensure that "the defendant freely and intelligently agreed to waive [his] right to appeal." Id. (quoting Teeter, 257 F.3d at 24) (alteration in original). "In examining whether the defendant knowingly and voluntarily waived his appellate rights, the text of the written plea agreement and the change-of-plea colloquy are of critical importance." Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010). But, even if the waiver is

- 8 -

knowing and voluntary, we retain discretion to disregard that provision if enforcing it would result in a "miscarriage of justice." Teeter, 257 F.3d at 25.

## A. Knowing and Voluntary

The Waiver of Appeal provision in Cabrera's plea agreement states that "[t]he Defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that the defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement." The "Sentence Recommendation" provision states, in relevant part: "The parties agree to recommend a term of imprisonment of **one hundred and eight (108) months**, should the defendant be a CHC of I, II or III."

Cabrera was sentenced to the specified 108-month term, and both the magistrate judge and district court reviewed the waiver with him. Hence, the government argues, this clearly stated appellate waiver was plainly triggered. Cabrera, however, asserts that he understood the agreement differently. In his view, "108 months would be the upper limit of any possible total sentence he might receive, not the time he had actually agreed to serve in prison." (Emphasis added.) That is, Cabrera maintains that the combined period of incarceration and supervised release comprise his "sentence," and the waiver of appeal is thus inoperative because his total sentence -- which included 144 months of

- 9 -

supervised release -- exceeded the agreed-upon 108 months.  Cabrera premises this argument on well-established First Circuit precedent holding that the word "sentence" in a plea agreement "encompasses every component of the sentence," including imprisonment, supervised release, and any attendant conditions.  United States v. Santiago, 769 F.3d 1, 7 (1st Cir. 2014).

There are two related problems with this argument. First, the Sentence Recommendation provision explicitly provided for "a term of imprisonment of one hundred and eight (108) months," not a total "sentence" of that length.  (Emphasis added; other emphasis deleted.)  Second, our case law establishes that a defendant's waiver of the right to appeal his sentence covers the period of supervised release and any attendant conditions regardless of whether those post-incarceration penalties are expressly referenced in the plea agreement.  See id.; see also, e.g., Vélez-Luciano, 814 F.3d at 557-58; United States v. Rojas, 780 F.3d 68, 69 (1st Cir. 2015).

That is not to say, however, that Cabrera's argument is unreasonable.  If, under our precedent, a "sentence" consists of both incarceration and supervised release, one may logically argue that a defendant who receives a term of supervised release that is not included in a "Sentence Recommendation" has not been "sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of [his] plea agreement."  But

- 10 -

even if that argument could fairly be raised under our caselaw where a term of supervised release is entirely discretionary,[3] it has no traction here. As the magistrate judge clarified at Cabrera's change-of-plea hearing, Cabrera was subject to a mandatory minimum term of supervised release of five years. The plea agreement, as amended, specified this statutory term in the provision labeled "Maximum Penalties." Hence, in moving forward with the plea agreement, Cabrera necessarily agreed to both 108 months' imprisonment and a minimum of five years of supervised

---

[3] Where the decision to impose supervised release is left to the district court's discretion, and the parties recommend only a term of imprisonment, a defendant could plausibly contend that, under ordinary contract principles, a sentence that includes a term of supervised release is not "in accordance with" a "Sentence Recommendation" proposing only a term of imprisonment. However, where a statute sets a mandatory minimum term of supervised release, that statutory minimum is unavoidably incorporated within a plea agreement whether or not expressly stated in the Sentence Recommendation.

Our precedent does not recognize this discretionary vs. mandatory difference, and the broad language in our cases poses a possible barrier to an appellant seeking to rely on such a distinction. However, as Cabrera points out, the plea agreements in a number of our principal cases on appellate sentencing waivers specified that the defendant faced a mandatory minimum five-year term of supervised release. Hence, we would have had no occasion in those cases to confront any possible differences between discretionary and mandatory terms of supervised release. See Vélez-Luciano, 814 F.3d at 559 (noting five-year mandatory minimum term of supervised release); Rojas, No. 3:13-cr-00149-JAG-MEL, Docket No. 34, at 2 (filed Aug. 6, 2013) (plea agreement specifying "not less than five (5) years"); Santiago, No. 3:12-cr-00260-DRD, Docket No. 31, at 2 (filed Aug. 31, 2012) (same: "not less than 5 years"); Del Valle-Cruz, No. 3:12-cr-00262-JAF, Docket No. 34, at 2 (filed Aug. 6, 2012) (same: "not less than 5 years").

release.  See, e.g., Vélez-Luciano, 814 F.3d at 559 (observing that "the plea agreement -- which [the defendant] signed and initialed -- noted that supervised release of at least five years was part of the maximum sentence").[4]

Cabrera resists this reasoning by challenging the adequacy of the plea colloquy concerning his exposure to a mandated term of supervised release.  He contends that "the record is unclear about whether [he] fully understood the consequences of [his] guilty plea," noting that even his attorney was confused. To be sure, as described above, there was initial uncertainty about whether the applicable term of supervised release was capped at three years or would be at least five years.  Once the court and counsel determined that the three-year maximum stated in the plea agreement was wrong, the only explanation of the error was given to Cabrera by his attorney off the record.  The magistrate judge

---

[4] The dissent states that we have incorrectly suggested that "a waiver of appeal may not extend to a term of supervised release where that term is left to the court's discretion by the plea agreement."  Dissent, at n.2.  Yet, the term (or duration) of supervised release is a statutory element of a sentence for which the parties may, and sometimes do, negotiate.  Accordingly, contract principles reasonably could be applied to such negotiated terms.  By contrast, the conditions of supervised release are neither governed by statute nor included in the Sentence Recommendation provision of plea agreements.  We have no need to consider here the impact on challenges to conditions of release if a waiver of appeal is determined not to bar appeal of the supervised release term.

- 12 -

then told Cabrera that "[t]here is nothing your lawyer can do about it."

If this were the entire colloquy, we would be concerned about what Cabrera's attorney told him and whether Cabrera understood that he was giving up his right to appeal a "sentence" that would include at least five years of supervised release in addition to the 108-month term of imprisonment.[5]  However, the magistrate judge went on to expressly advise Cabrera that his maximum sentence could include "a term of supervised release of up to life."  Asked if he understood that possibility, Cabrera replied "Yes."  Subsequently, the magistrate judge explained the waiver of appeal provision, again eliciting a "Yes" response after asking Cabrera if he knew that his "plea agreement contains a waiver of appeal in which you give up your right to appeal both the judgment and the sentence if the court accepts your plea agreement and sentences you according to its terms, conditions and recommendations."

---

[5] Although certain of Cabrera's contentions in challenging the knowing and voluntary nature of his waiver of appeal appear to implicate his acceptance of the plea agreement itself, Cabrera emphatically disclaims any intention to challenge the agreement as a whole.  Absent the plea deal, Cabrera could have faced a fifteen-year mandatory minimum sentence on the count charging him with producing child pornography.  See 18 U.S.C. § 2251(e).  He asserts that his arguments are focused solely on the scope of the appellate waiver and whether he knowingly waived his right to appeal a "sentence" that exceeded the recommended 108 months' imprisonment.

- 13 -

Under our precedent on the scope of sentencing appeal waivers, this colloquy was sufficient to satisfy Teeter's inquiry requirement. The magistrate judge's explanation of the appeal waiver's consequences was "specific enough to confirm the defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." Teeter, 257 F.3d at 24 n.7; see also Sotirion, 617 F.3d at 35 (upholding appellate waiver as knowing and voluntary where, inter alia, the court "did not fail to address the waiver provision entirely, nor did he contradict the terms of the written waiver"). Moreover, if any uncertainty remained, it was dispelled by the PSR, which reported both the recommended 108-month term of imprisonment, and the five-year statutory minimum term of supervised release. Indeed, Cabrera specifically advocated for a 108-month term of imprisonment in his objections to the PSR, and he recognized in the same document that he would be subject to a minimum five-year term of supervised release following the period of incarceration and that he would face restrictions on contact with his children.

Accordingly, Cabrera may challenge his sentence, including the term and conditions of supervised release, only if he can show that his case falls within the rare exception carved out by the final prong of the Teeter test: that enforcement of the waiver would work a miscarriage of justice.

## B. Miscarriage of Justice

In Teeter, we cautioned that, because appellate waivers "are made before any manifestation of sentencing error emerges, appellate courts must remain free to grant relief from them in egregious cases." 257 F.3d at 25. Appellate waivers are "meant to bring finality to proceedings conducted in the ordinary course," but they are not intended to leave defendants "totally exposed to future vagaries (however harsh, unfair, or unforeseeable)." Id. Therefore, we held that "if denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound discretion, may refuse to honor the waiver." Id.

Still, the miscarriage-of-justice exception is to be applied "sparingly and without undue generosity." Sotirion, 617 F.3d at 36 (quoting Teeter, 257 F.3d at 26); see also Del Valle-Cruz, 785 F.3d at 56 (observing that the exception is "often sought but seldom meted out" (quoting Santiago, 769 F.3d at 10)); United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006) (noting that the miscarriage-of-justice standard "requires a strong showing of innocence, unfairness, or the like"); Teeter, 257 F.3d at 25 n.10 (stating that "a waiver should [not] be construed to bar an appeal if the trial court imposes a sentence exceeding the maximum penalty permitted by law or one that violates a material term of the plea agreement" (citations omitted)). Thus, "[t]o successfully invoke the miscarriage of justice exception, a

- 15 -

'garden-variety error will not suffice,' rather there must be, 'at a bare minimum, an increment of error more glaring than routine reversible error.'" Santiago, 769 F.3d at 8 (quoting United States v. Chambers, 710 F.3d 23, 31 (1st Cir. 2013)). In making that assessment, "we consider, among other things, the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." Gil-Quezada, 445 F.3d at 37; see also United States v. Marte-de la Cruz, 876 F.3d 370, 374 (1st Cir. 2017) (same).

### 1. Terms of Imprisonment and Supervised Release

Cabrera makes a threshold argument that he should not be sentenced as a "typical sexual offender" because his relationship with Doe was "consensual and voluntary." Under Puerto Rico law, a consensual sexual relationship with Doe would have been lawful. Moreover, Cabrera emphasizes that there is no evidence of his "predatory exploitation" of Doe. Indeed, although the government maintains that Cabrera's "conduct was serious and involved the sexual exploitation of a minor," including physical sexual conduct (which Cabrera denies), it concedes that Doe "willingly provided [Cabrera] with the . . . images." In short, Cabrera argues that his within-guidelines sentence is unduly harsh given his specific conduct -- what he calls "consensual sexting" -- and thus enforcing the waiver of appeal would effect a miscarriage of justice.

- 16 -

We disagree. A claim that an otherwise lawful, within-guidelines sentence is excessive asserts just the sort of "garden-variety" error that does not surmount the miscarriage-of-justice hurdle. See, e.g., Santiago, 769 F.3d at 8. Moreover, Cabrera concedes, as he must, that the terms of the plea agreement required the parties to jointly recommend a 108-month term of imprisonment -- a recommendation that Cabrera in fact made, both in his sentencing memorandum and at sentencing, and which the district court explicitly adopted. Cabrera can hardly claim that barring a challenge to his term of imprisonment amounts to a miscarriage of justice when he received the precise term for which he advocated.

Cabrera's objection to his term of supervised release likewise targets the sort of garden-variety error that need not be reviewed on appeal to avoid a miscarriage of justice. He asserts, with virtually no elaboration, that the district court gave an inadequate justification for picking the specific term that it did, but he does not explain why a twelve-year term is improper. Although the district court's remarks were brief, the court did reveal why it chose "a significant" period of time:

> [I]f you do it right, if you restructure your life, if you don't give the Probation Officer any reason to believe that you are engaging in any similar action or in any other type of illegal action they will place you in minimal supervision. But if you set a different course in life, then they will be able to act.

Moreover, lengthy terms of supervised release for sexual-misconduct crimes are not uncommon.  See, e.g., Vélez-Luciano, 814 F.3d at 558 (fifteen years); Del Valle-Cruz, 785 F.3d at 53 (seven years); Rojas, 780 F.3d at 68 (ten years); Santiago, 769 F.3d at 6 (ten years); United States v. Morales-Cruz, 712 F.3d 71, 72 (1st Cir. 2013) (ten years); United States v. Perazza-Mercado, 553 F.3d 65, 66 (1st Cir. 2009) (fifteen years).  Hence, enforcing the appellate waiver for Cabrera's contentions that the court inadequately explained the 144-month term, and should have selected a shorter term, does not result in a miscarriage of justice.

**2. Supervised Release Conditions**

We thus are left with only Cabrera's challenge to the following six of the twenty-three imposed conditions of supervised release[6]:

> [1] The defendant shall not associate with codefendants, individuals with whom . . . defendant has previously[] traded illicit[] material, a family member or friend under Criminal Justice supervision for a sex crime or

---

[6] The district court did not number the conditions of supervised release, and we have added numbers here only for ease of reference.  We note that, in some instances, the court divided into several separate conditions a single, multi-part recommendation contained in the PSR.  Hence, the fifteen numbered conditions listed in the PSR roughly correlate with twenty of the conditions articulated by the court at the sentencing hearing. The additional three conditions prohibited Cabrera from committing another crime or unlawfully possessing controlled substances (requirements noted in the PSR separately from the recommended conditions), and required him to "participate in an approved in-patient or out-patient mental health treatment program."

identified past victim unless in a therapeutic setting and with the prior approval of the Probation Officer.

[2] The defendant shall have no personal contact with the victim and or minors under the age of 18 through mail, letters, telephone communication, audio or visual computer or electronic devices, visit social networking sights [sic] or third parties unless approved in advance by the Probation Officer. The only exception in this condition relies on the incidental contact in normal life with minors and those that relate to his relatives.

[3] The defendant shall not reside, be in the company, date or socialize by himself with a child or children below the age of 18 unless previously approved by the Probation Officer and after a third party risk has been duly assigned.

[4] The defendant shall not engage in a specified occupation, business or profession bearing a reasonable relationship to the conduct constituting the offense. Specifically the defendant shall not work with children under the age of 18 or hold a job that gives him authority over potential victims, gives him access to vulnerable populations or places him in settings in school or playgrounds. Any employment must be approved in advance by the Probation Officer who will make an assessment of the job placement and set employment restrictions if warranted based on the sex offender management procedure manual.

[5] The defendant shall not participate in any volunteer activity or be involved in any children or youth organization or any group that would bring him in close contact with a child or children under the age of 18 unless prior approval of the Probation Officer.

[6] The defendant shall stay at his approved residence every night and not sleep or stay overnight anywhere else without prior approval from the probation office.

The government concedes that the court did not explain its reasons for imposing these six conditions. Indeed, based on our review of the sentencing transcript, the court provided no

specific explanation for any of the imposed conditions of supervised release, and instead merely read aloud the list of conditions largely as proposed in the PSR. Nevertheless, the government contends that the rationale for the conditions is apparent from the record. Moreover, the government presses its argument that Cabrera's appeal waiver should operate to bar his challenge to all of these condition. Hence, we look to the record to determine whether the court's reasoning can be inferred as to each condition, keeping in mind that Cabrera's appeal waiver bars appellate review of all but the most egregiously unjustified conditions. See, e.g., Del Valle-Cruz, 785 F.3d at 55-56.

As to the first condition -- which restricts Cabrera's contact with "codefendants, individuals with whom . . . [Cabrera] has previously[] traded illicit[] material," persons "under Criminal Justice supervision for a sex crime," or Doe -- Cabrera makes only a perfunctory attempt to explain why upholding it would result in a miscarriage of justice, claiming that this condition should not apply to him because he never engaged in "illicit trading" of child pornography, even if he did show the illicit pictures to his coworkers. Arguing that a boilerplate condition does not apply precisely to his conduct does not explain why enforcing the condition would amount to a miscarriage of justice, especially when unlawfully displaying images to others is conduct that Cabrera acknowledges doing.

As to the second, fourth, and fifth conditions -- restricting Cabrera's communication, employment, and volunteer activities with minors, respectively -- we find no error sufficient to support a miscarriage-of-justice finding. As we explained in United States v. Pabon, associational restrictions "operate to protect the public, especially children, from the defendant, as well as to promote the defendant's rehabilitation." 819 F.3d 26, 31 (1st Cir. 2016) (citation omitted). And, although the record supporting these conditions is limited, Cabrera nevertheless pled guilty to conduct involving the sexual exploitation of a minor, justifying at least some degree of associational restriction. Moreover, none of these conditions imposes "an outright ban on association with minors, but only curtail association, such as by requiring pre-approval by the probation officer or another authority." Id. at 31-32. With the opportunity for relief from the restrictions, and the additional exception made in condition two for Cabrera's communications with family members, these conditions are sufficiently circumscribed such that enforcing the appellate waiver would not constitute a miscarriage of justice. See id. at 32 ("Where the restriction is subject to supervision by the probation officer, a safeguard is that the defendant can petition the district court to modify the condition in the event that approval has been unreasonably withheld."); see also United States v. Fey, 834 F.3d 1, 6 (1st Cir. 2016) (upholding a

- 21 -

condition, imposed without "express explanation," requiring the defendant to "seek approval from probation before accepting a job or volunteer activity that would bring him into direct contact with minors"); Del Valle-Cruz, 785 F.3d at 57 ("Although we are troubled by the imposition of conditions that would prevent [the defendant] from engaging in activities such as volunteering at his son's school, . . . we cannot say with assurance that their imposition would result in a miscarriage of justice.").

As to the sixth condition -- which requires Cabrera to "stay at his approved residence every night" unless he has "prior approval from the probation office" -- we similarly reject the miscarriage-of-justice contention. Although the court erred by providing no reasoning for its decision, "we cannot say it was 'an increment of error more glaring than routine reversible error.'" Del Valle-Cruz, 785 F.3d at 56 (quoting Santiago, 769 F.3d at 8). And, as with the associational restriction discussed above, Cabrera may request exceptions to this condition from his probation officer. See United States v. DaSilva, 844 F.3d 8, 14 (1st Cir. 2016) ("[G]iving the probation officer some authority to make exceptions as warranted is generally seen as a benefit of such orders in that it allows for flexibility and permits personal circumstances to be dealt with as they arise.").

Cabrera's sole remaining challenge is to the third condition of supervised release. To the extent that this condition

limits his ability to "reside, be in the company, date or socialize by himself with" minors generally, we find no miscarriage of justice for the same reasons we have upheld the appeal waiver with respect to the other associational conditions. Cabrera argues, however, that this condition is overbroad because, unlike condition two, which makes an exception for communication with family members, condition three makes no exception for Cabrera's own children -- a son and a daughter who will still be minors when Cabrera completes his 108-month sentence. Cabrera contends that this condition impermissibly restricts his constitutional right to raise his children and, particularly because the district court gave no reasons for imposing it, barring an appellate challenge would effect a miscarriage of justice.[7]

We agree that, in this one respect, Cabrera meets the stringent criteria for relief under the miscarriage-of-justice exception. In Del Valle-Cruz, we stated that a waiver of appeal may be disregarded "when an error of significant or constitutional dimension is clear, and where there is 'little prejudice to the

---

[7] Our dissenting colleague implies that, instead of deciding the miscarriage-of-justice question, we should remand for clarification on whether the district court meant to include Cabrera's own children within the scope of condition three. In our view, there is no lack of clarity in the condition as announced by the court. In stark contrast to condition two, condition three contains no exception for Cabrera's children. Given that the condition as imposed clearly restricts a fundamental liberty interest, see infra, we can see no justification for avoiding the miscarriage-of-justice inquiry.

government should we take up the merits of [the defendant's] appeal.'" 785 F.3d at 56 (quoting Santiago, 769 F.3d at 10) (alteration in original). In particular, we concluded that we could look beyond the defendant's appellate waiver because the district court had provided no justification for two conditions that burdened the defendant's "fundamental constitutional liberty interest" in his relationship with his child. Id. at 57; see also Quilloin v. Walcott, 434 U.S. 246, 255 (1978) (recognizing that "the relationship between parent and child is constitutionally protected"); Vélez-Luciano, 814 F.3d at 563 & n.12 (noting the "substantial constitutional questions" concerning restrictions on the defendant's "relationship with his minor children"); Del Valle-Cruz, 785 F.3d at 58 (stating that "[t]he district court is required to provide a reasoned and case-specific explanation for the conditions it imposes" (internal quotation marks omitted)); Perazza-Mercado, 553 F.3d at 75 (noting that "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions" (quoting United States v. Warren, 186 F.3d 358, 366 (3d Cir. 1999)).

So too here. As in Del Valle-Cruz, the error is manifest: the district court imposed condition three, restricting Cabrera's relationship with his children, without any explanation, despite the clear precedent holding that "a district court is required to provide a reasoned and case-specific explanation for

the sentence it imposes." United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007); cf. United States v. Mercado, 777 F.3d 532, 539 (1st Cir. 2015) (rejecting challenge to conditions restricting defendant's interactions with minors where the district court detailed its reasons, including "to mitigate the risk of this particular defendant reoffending," and also linked "the rehabilitative and deterrent features of the . . . conditions to the defendant's lengthy criminal history and his persistent failure to comply with the terms of his pretrial release" (emphasis added)).[8]  In addition, we discern no burden on the government from merits review of Cabrera's challenge to the condition.

Although in some circumstances there would be reason to distinguish between a defendant's son and daughter in evaluating the asserted injustice of enforcing an appellate waiver for the associational restriction imposed by condition three, see, e.g., Pabon, 819 F.3d at 33 n.6; Vélez-Luciano, 814 F.3d at 563-64, the criminal activity at issue here -- a consensual exchange of

---

[8] In response to an inquiry from the panel, the parties obtained information from the United States Probation Office for the District of Puerto Rico on the use of this condition in that jurisdiction.  Probation Officer Charlette Agostini reported that "[t]his special condition is imposed in cases involving sex offenses against minors."  She stated that "[t]he courts routinely review each case individually and determine which conditions reasonably apply given the particularity of each case."  An on-the-record explanation of the court's reasoning is necessary, however, to confirm that such an assessment took place and to "enable[] appellate review."  Perazza-Mercado, 553 F.3d at 75.

sexually explicit images with a non-family member who is of age to consent under Puerto Rico law -- does not indicate a risk of harm to either of Cabrera's minor children. Nor does Cabrera's personal history otherwise present such a risk; his amended PSR reports stable family relationships and no history of drug use or alcohol-related problems. Absent countervailing considerations -- and the record before us reveals none -- the court's failure to give any rationale for depriving Cabrera of this constitutional liberty interest leaves "no doubt that enforcement of the waiver would be a miscarriage of justice." Del Valle-Cruz, 785 F.3d at 57; see also id. (noting that a condition imposed without explanation "does not automatically result in a miscarriage of justice," but the standard may be met "where, as here, the error is of this constitutional dimension").

The dissent contends that our decision protects the defendant's rights by "ignoring the equal rights of [Cabrera's] wife and children." To the contrary, we agree that the wellbeing of Cabrera's family members is a relevant consideration for the district court in evaluating whether to limit Cabrera's constitutional right to associate with his children. We hold only that a miscarriage of justice would result if we denied Cabrera an opportunity to challenge that significant, yet unexplained, limitation -- and that, as discussed infra, the condition cannot be upheld absent explanation.

In arguing that the record reveals the district court's rationale for condition three, our dissenting colleague points to the court's "concern[] about the risk of illegal actions by the defendant while on supervised release" and the court's warnings to Cabrera not to repeat "the type of actions in which he engaged" or to take retaliatory action against Doe's family. The court did not, however, articulate concerns or warnings about Cabrera's interactions with his children. Hence, the concerns it expressed do not explain the constitutional limitation imposed by the condition.

Nor is the court's rationale inferable from the record. The dissent's detailed recounting of the defendant's activities with Doe -- a female of consenting age, and not a family member -- does not demonstrate a need to interfere with Cabrera's constitutionally protected relationship with his own offspring. The court did not reject out-of-hand the following depiction of Cabrera's conduct, which was offered by defense counsel:

> [W]e are not here to pass judgment on moral values. Nevertheless he was in a relationship, he began a relationship with this young woman. He was hiding that relationship from his wife. And he incurred in the acts that the Court has before her. But this is not one of these people who prays on young women for the purpose of committing sexual offenses. This is just one of those cases of misjudgment of what the law is in relation to relationships with older young people and younger adults.

The court itself expressly recognized the positive aspects of Cabrera's background, noting that he "has had a stable relationship for the past six years," is a first-time offender, maintained stable employment, and had letters from relatives and neighbors attesting to his positive character. Our point, simply put, is that the district court's assessment of the circumstances, not ours, determines the validity of condition three. And given the facts as depicted by the court, the need for such a constitutionally significant limitation is not apparent.

Recognizing the relevance of our decision in Del Valle-Cruz to this case, the dissent attempts to distinguish the facts with an assertion that Cabrera was more of a danger to his son and daughter than the defendant in Del Valle-Cruz was to his children. As our discussion below reveals, the record before us does not support that conclusion. Our colleague further suggests that reliance on Del Valle-Cruz is inapt where a defendant is sentenced for an actual sex offense rather than for failing to register as a sex offender. Although that distinction is certainly relevant when we consider a challenge to a condition restricting parental rights, we have never taken such a categorical approach. Rather, as reflected in the discussion of our caselaw in the next section, our inquiry relies on case-by-case scrutiny of individual circumstances.

Accordingly, we exercise our discretion to bypass the appeal waiver with respect to condition three and proceed to the merits of Cabrera's challenge.

**C. Cabrera's Contact with His Children.**

Cabrera's failure to object to condition three at sentencing means our review is only for plain error. See Vélez-Luciano, 814 F.3d at 565. The government argues in a footnote, however, that we should not afford Cabrera even plain error review, contending that he has waived any arguments regarding his conditions of supervised release by failing to frame his arguments under that standard's familiar rubric. Specifically, the government points to our recent opinion in Pabon, where we held that a defendant's challenges to his conditions of supervised release were waived "because he ha[d] not even attempted to meet his four-part burden for forfeited claims" under plain error review. Pabon, 819 F.3d at 33. Pabon, however, did not address such claims in the context of an appellate waiver. See id. at 30 n.3 (noting that the government "expressly declined" to rely on appeal waiver because it was "easier to resolve the appeal on the merits"). More importantly, as we have recently indicated, our circuit precedent is unclear as to "what distinction, if any,

exists between the miscarriage-of-justice and the plain-error standards." Vélez-Luciano, 814 F.3d at 565 n.15 (emphasis added).[9]

Given this lack of clarity, we decline to find that Cabrera has waived his challenge and review for plain error.[10]

----

[9] We acknowledge the artificiality of deciding that a challenge to a supervised release condition is sufficiently persuasive to meet the miscarriage-of-justice standard, and then separately analyzing the merits of the challenge, when the arguments made for a miscarriage of justice are indistinguishable from the arguments made on the merits. Indeed, it is difficult to imagine any argument that could vault the exceptionally high hurdle imposed by the miscarriage-of-justice standard only to stumble on abuse-of-discretion or plain-error review. See Vélez-Luciano, 814 F.3d at 565 n.15 (finding that condition of supervised release amounted to both a miscarriage of justice and plain error). Regardless, our recent cases in this area follow this two-step approach. See Vélez-Luciano, 814 F.3d at 565 n.15; Del Valle-Cruz, 785 F.3d at 57 (deciding whether appeal waiver would work a miscarriage of justice before "proceed[ing] to consider the merits of the appeal" under abuse-of-discretion standard). Hence, we will do the same, leaving for another day the questions of whether a separate inquiry on the merits is necessary after finding a miscarriage of justice, and whether plain-error and miscarriage-of-justice review are functional equivalents.

[10] Notwithstanding our court's recognition of uncertainty about whether the plain error and miscarriage-of-justice standards fully overlap, and the importance of the right at stake here, the dissent takes the unreasonable position that Cabrera is not entitled to plain error review. In justifying that position, the dissent dismisses as irrelevant an important difference between this case and Pabon. In Pabon, we did not address the miscarriage-of-justice standard, and the opinion does not describe the arguments, if any, that the defendant offered on that subject. By contrast, in presenting his miscarriage-of-justice argument, Cabrera has, in effect, argued each element of the plain error test, and we have addressed them. See United States v. Garay-Sierra, 885 F.3d 7, 12 (1st Cir. 2018) (describing the four elements of plain error as "error, plainness, prejudice to [him], and the threat of a miscarriage of justice" (quoting United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (alteration in original)).

- 30 -

None of our prior cases addressing conditions of supervised release that restrict parental rights is a perfect match for Cabrera's circumstances. As we shall describe, the defendants' criminal activities differ considerably from case to case, and the challenged conditions most often were imposed when the defendant had failed to register as a sex offender rather than for the sexual misconduct itself. The lapse in time between the sexual misconduct and the imposition of the challenged conditions thus also varies. Nonetheless, taken as a whole, our precedent provides relevant guidance for the plain error inquiry here.

We begin by elaborating on our analysis in Del Valle-Cruz. As recounted above, we disregarded the defendant's waiver of appeal because the unexplained imposition of conditions "prohibiting [the defendant] from having personal contact with, and living with, any minor child" constituted a miscarriage of justice when applied to the defendant's own children. 785 F.3d at 52, 57-58. We then decided on the merits that the district court had abused its discretion in imposing the conditions without explanation. Id. at 57-64. In reaching that conclusion, we relied heavily on the lack of a reasonable relationship between the defendant's crime -- violation of the federal Sex Offender Registration and Notification Act ("SORNA") -- and the ban on

interaction with his minor children. See id. at 59–62.[11]   We also noted the absence of any record evidence that the presence of a child in the home would create a risk of recidivism; the condition was imposed eighteen years after the underlying sexual offense; the defendant had committed no sexual or minor-based crimes during those eighteen years; he had lived with his older children for six years without incident; "his school and employment demonstrate[d] increasing stability in recent years"; and "[t]he district court provided no clue as to its reasoning." Id.   We also held that the authorization of exceptions for contact with the defendant's own children, at the discretion of a probation officer, was insufficient to overcome the underlying error. See id. at 63 ("We . . . decline the government's invitation to punt by placing a probation officer between parent and child.").[12]

---

[11] SORNA defines "sex offender" as "an individual who was convicted of a sex offense," and provides, inter alia, that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."   34 U.S.C. §§ 20911(1), 20913(a).

[12] The dissent fails to adhere to this precedent in concluding that the district court, without explanation, can place a probation officer between Cabrera and his children.   Under Del Valle-Cruz, such an intrusion into the parental relationship, absent explanation from the district court, is unsupportable.   The case highlighted by the dissent, United States v. Mercado, 777 F.3d 532 (1st Cir. 2015), is not to the contrary.   As we explained in rejecting the defendant's challenge to various conditions, including restricted contact with his children, the district court there "specifically linked the rehabilitative and deterrent features of the supervised release term and its conditions to the defendant's lengthy criminal history and his persistent failure to

Subsequently, in Vélez-Luciano, we faced a challenge to release conditions restricting contact with minors by a defendant who, like Cabrera, had pled guilty to possession of child pornography and waived his right to appeal. See 815 F.3d at 557. There, the record indicated the defendant had sexually abused two unrelated female minors. See id. at 556-57. We concluded that the miscarriage-of-justice standard would bar a challenge to the condition insofar as it applied to the defendant's interactions with his daughter, see id. at 563, noting, inter alia, that the defendant had lived for a period of time "in the same house as one of his minor victims," id. at 564; cf. Santiago, 769 F.3d at 6 & n.3, 9 (rejecting miscarriage-of-justice claim for a condition barring contact with minor children, including defendant's own, where defendant had molested the daughter of his former girlfriend while living with the girlfriend and her daughter). However, we also noted in dictum in Vélez-Luciano that applying the condition to the defendant's minor son raises "substantial constitutional

comply with the terms of his pretrial release." Id. at 539. In this case, however, the court erroneously gave no explanation for condition three. Moreover, the panel in Mercado noted that the defendant had neither lived with, nor supported, his two minor children for some years. Id. at 539 n.3. By contrast, the record indicates that Cabrera's nuclear family was intact. Indeed, according to defense counsel, Cabrera's wife brought their second child -- born after his arrest -- to the prison to see him.

- 33 -

questions" because the record lacked any evidence that the defendant was a risk to male minors.  814 F.3d at 564.[13]

More recently, in Pabon, we rejected a defendant's challenge "that the district court failed to make sufficient findings justifying the restrictions on association with his minor daughter."  819 F.3d at 34.  The defendant, who had previously been convicted of sexually abusing the fourteen-year-old daughter of his then-girlfriend, had been sentenced in the case on appeal for failing to register as a sex offender as required by SORNA. Id. at 29.  Although we acknowledged that Del Valle-Cruz had "held that an infringement of a parent's right to associate with his child requires 'a greater justification,'" we concluded that, given the facts of the case, neither the restriction itself nor the district court's failure to more fully explain the condition, was "clear or obvious error."  Id. at 34 (quoting Del Valle-Cruz, 785 F.3d at 62).  Among other points, we noted that, "unlike Del Valle-Cruz, [Pabon] has a copious criminal history and received a

_____

[13]  In Vélez-Luciano, the defendant did not raise the constitutional implications of restricting contact with his children until oral argument, and we therefore deemed the argument waived.  814 F.3d at 563.  We nonetheless discussed the issue at some length, and "highlight[ed]" the constitutional issue triggered by application of the condition to the defendant's son, "so that the Probation Officer does not operate on a blank legal canvas should [the defendant] request, after his release from prison . . . , the Probation Officer to exercise the authority, delegated by the District Judge, to make exceptions from this condition."  Id. at 564.

clear explanation for the conditions imposed." Id. at 32.[14] However, we also acknowledged our observation in Vélez-Luciano, in dictum, that "substantial constitutional questions" are presented when a defendant convicted for sexual misconduct involving minor girls is restricted from associating with his son. Id. at 34 n.6.

In Fey, another SORNA failure-to-register case, we found plain error where the district court imposed, without explanation, a supervised release condition similar to the one Cabrera challenges here. 834 F.3d at 3. Specifically, we noted that the challenged condition, "in addition to having a weak temporal connection with Fey's sex offense," was overbroad, "prohibit[ing] Fey from having unapproved 'direct or indirect contact' with all children: male children, female children, and children of all ages,

---

[14] Pabon had preserved some of his challenges to the associational conditions, and we reviewed those for abuse-of-discretion. See 819 F.3d at 30. Other challenges, including to restrictions on contact with his daughter, were unpreserved and subject only to plain-error review. See id. at 33. We held, with respect to both categories, that the court's explanation for imposing the conditions was adequate. We described the court's rationales, in pertinent part, as follows:

> The court found that the conditions were necessary in order to keep the public safe, and especially to protect minors from Pabon's violent inclinations. It explained that Pabon had "demons" he needed to deal with, a history of beating up women that needed to be addressed, and an inability to control his anger that made him a potential danger to children.

819 F.3d at 33.

whether or not they are members of Fey's family." Id. Because the "record reveal[ed] no instances in which Fey committed a sex offense of any kind against boys, against pre-pubescent children, or against members of his family," we vacated the condition and remanded for resentencing "limited to a reexamination of that condition." Id. at 5, 8.

We can readily draw from this precedent the conclusion that condition three's unexplained prohibition on Cabrera's contact with his son clears the plain error hurdle. As reflected in our discussion above, we repeatedly have expressed concern about conditions that limit contact with male children when the defendant's offense involved no inappropriate conduct with males. Although the cited decisions all were issued after Cabrera's sentencing in February 2015, both the parental liberty interest at stake and the requirement to justify conditions of supervised release were well established by that time. See Quilloin, 434 U.S. at 255 (noting, in 1978, the importance of the relationship between parent and child); Perazza-Mercado, 553 F.3d at 75 (noting, in 2009, that we had "consistently required district courts to set forth factual findings" to justify special conditions (quoting Warren, 186 F.3d at 366)). We thus have no difficulty concluding that the summary prohibition on Cabrera's contact with his son, imposed "without apparent grounding in the record," is a plain, prejudicial error of such consequence that this aspect of Cabrera's

sentencing "impair[s] the 'fairness, integrity, or public reputation of the judicial proceedings.'" Fey, 834 F.3d at 5 (quoting Perazza-Mercado, 553 F.3d at 79).

The impropriety of the summary prohibition on contact between Cabrera and his daughter, subject to Probation Office approval, is arguably less obvious. Cabrera's criminal activity did involve a young female. In addition, the sentencing condition he challenges was imposed for the sexual misconduct crime itself and not -- as in most of the cases above -- for a SORNA crime that occurred years after the sexual misconduct. On the facts before us, however, the unexplained bar against Cabrera's contact with his daughter is also troubling. Unlike the defendant's unlawful activity in Pabon, where we rejected a claim of plain error, Cabrera's crime did not involve a girl below the applicable age of consent and did not take place at a domestic partner's home. See 819 F.3d at 32. To the contrary -- and without minimizing or condoning Cabrera's criminal conduct in any way -- any physical relationship he had with Doe would not itself have been unlawful. Moreover, unlike the defendant in Pabon -- who had "violent inclinations," 819 F.3d at 33 -- Cabrera's PSR depicts him as a stable and supportive father and domestic partner.[15] Hence, as in

---

[15] The dissent suggests that we have provided a false contrast with respect to violence, pointing to the fight between Cabrera and Doe's brother that left the brother severely injured. The facts surrounding that encounter are disputed, with Cabrera

- 37 -

<u>Fey</u>, where we vacated the associational condition, there is no basis in the record for concluding that Cabrera "is a danger to [his] children," irrespective of gender.  834 F.3d at 5.[16]

As we explained in both <u>Del Valle-Cruz</u> and <u>Fey</u>, because impairment of "a defendant's relationship with his child involve[s] a very significant deprivation of liberty, [it] require[s] a <u>greater</u> justification."  <u>Del Valle-Cruz</u>, 785 F.3d at 62 (emphasis added).  Where, as here, no justification at all is given, and the record reveals none, condition three must be vacated insofar as it applies to both of his children.  To be clear, we are not foreclosing the district court from restricting Cabrera's interactions with his daughter or son under 18 U.S.C. § 3583(d), which gives courts the discretion to order conditions of supervised release that meet the statute's specified requirements.[17]  However,

_____

maintaining that he acted in self-defense. At the sentencing hearing, defense counsel reported that Cabrera also was wounded and received treatment at a hospital.  Although the district court found the severity of the brother's injuries "troublesome," it also noted "that probably there could be an argument of self defense."  Whatever the full story, this isolated incident is a far cry from Pabon's "history of beating up women" and "inability to control his anger."  819 F.3d at 33.

[16] The dissent suggests that condition three is an appropriate protection for Cabrera's daughter because she will turn sixteen -- Doe's age when Cabrera engaged in sexually explicit communications with her -- during Cabrera's supervised release term.  However, given the obvious differences in the two relationships, it is not apparent how Cabrera's interactions with Doe support limiting his parental rights.

[17] Section 3583(d) states, in pertinent part, that the court may order any "condition it considers to be appropriate" to the

- 38 -

any such restrictions imposed on remand must be explained and supported by the record.[18]

## III.

For the reasons given above, we dismiss Cabrera's appeal of his terms of imprisonment and supervised release, and of the first, second, fourth, fifth, and sixth conditions of supervised release.  We vacate the third condition of supervised release, and remand to the district court for reconsideration of that condition.

So ordered.

---

extent that the condition, inter alia, "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)."  Those subsections of § 3553(a)(2) refer to

> the need for the sentence imposed . . .
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).

[18] Although we do not minimize the burdens on trial judges in this circuit, who often have exceptionally heavy criminal dockets, we note a continuing pattern of constitutionally significant associational conditions imposed with little or no explanation. We urge district courts to alter that practice by giving "reasoned and case-specific explanation[s]" for the conditions they impose. Perazza-Mercado, 553 F.3d at 78 (quoting Gilman, 478 F.3d at 446). Such explanations are not only required by statute, see 18 U.S.C. § 3553(c), but they also enhance appellate review.  See, e.g., Del Valle-Cruz, 785 F.3d at 58.

- 39 -

**-Concurring and Dissenting Opinions Follow-**

**TORRUELLA**, **Circuit Judge, concurring.** I join the court's opinion but write separately to express my concern with the path that this Court's precedents have taken with regard to enforcing appellate waivers when the district court imposes a sentence with a term of supervised release exceeding that which was expressly contemplated in the "Sentencing Recommendation" provision of a plea agreement. Where the parties specifically included some terms of a "sentence" -- which this Court has held includes any period of incarceration and any subsequent term of supervised release, Santiago, 769 F.3d at 7 -- but omitted others,[19] it must be presumed that they acted intentionally and purposefully in that inclusion and exclusion. Cf. Dean v. United States, 556 U.S. 568, 573 (2009) (stating that Congress's inclusion of particular language in a statute but omission of that language in another section of the same Act is presumed intentional (citing Russello v. United States, 464 U.S. 16, 23 (1983))). The district court's imposition of additional restraints on a defendant's liberty beyond those delineated in a plea agreement renders the resultant sentence not "in accordance with the terms and conditions

---

[19] As the court's opinion has aptly and correctly noted, when facing a mandatory minimum term of supervised release, the parties cannot contractually void that statutory minimum by failing to reference it in the sentencing recommendation of a plea agreement. In such cases, a term of supervised release is necessarily incorporated into the plea agreement and is precluded from appeal by an enforceable appellate waiver. See Rojas, 780 F.3d at 69.

set forth in the Sentence Recommendation provisions of [that] plea agreement."  Thus, upholding appellate waivers in such circumstances violates the essential contract law principles governing our interpretation of plea agreements.  See United States v. Bermúdez, 407 F.3d 536, 540 (1st Cir. 2005) (citing United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995)).

More simply put, when a defendant is sentenced to a term of supervised release beyond that for which he has bargained, the waiver of appeal provision of the plea agreement should not be triggered.  Moving forward, I encourage parties to a plea agreement to clearly delineate the terms of the "sentence" that they seek the district court to impose.  Should the parties wish to leave the duration of a term of supervised release to the discretion of the district court, it would not be overly burdensome for them to state as much in their proposed sentencing recommendation.

**LYNCH**, <u>**Circuit Judge, dissenting**</u>.  With great respect for my colleagues in the majority, I fear this opinion will make it more difficult for courts to impose conditions of supervised release meant to protect the families, and particularly the minor daughters, of convicted sex offenders (who here had preyed on a minor female) and to monitor such offenders better.  The district court was clearly worried that Cabrera would engage in illegal activities with minors while out on supervised release, and with good reason given the facts of this case.  And while the majority says it wishes to protect the defendant's rights, it does so by ignoring the equal rights of his wife and children.

I agree that the length of the sentence must be affirmed but strongly disagree that the imposition of condition three is a "miscarriage of justice" under <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14 (1st Cir. 2001), and so is not covered by the waiver of appeal.

The majority, in my view, departs from binding circuit law in every step of its miscarriage analysis.  The majority then relies on waived and meritless arguments to find that the imposition of condition three was plain error.[20]

---

[20]    There is a question whether the district court in fact intended condition three to apply to contact with Cabrera's children.  We often remand for clarification and do not need to find a miscarriage of justice to reach that result.  <u>See, e.g.</u>, <u>United States</u> v. <u>Cunningham</u>, 201 F.3d 20, 26 (1st Cir. 2000).  The majority did not take the option of remanding for clarification as to condition three without deciding the miscarriage of justice

## A.   Miscarriage of Justice

In my view, the majority opinion is barred by circuit precedent from concluding that a miscarriage of justice is caused by condition three.[21]   A finding of miscarriage of justice "is meant only for 'egregious cases' and is to be applied 'sparingly and without undue generosity.'"   United States v. Santiago, 769 F.3d 1, 8 (1st Cir. 2014) (quoting Sotirion v. United States, 617 F.3d 27, 36 (1st Cir. 2010)).   There is no egregious error in condition three.   The majority says that the miscarriage of justice

---

issue.   For the purposes of this dissent, I will read condition three as the majority does.

[21]   I agree with the majority that the waiver covers the term and conditions of supervised release, but I do not join its suggestion that a waiver of appeal may not extend to a term of supervised release where that term is left to the court's discretion by the plea agreement.   That argument is foreclosed by our case law.   United States v. Vélez-Luciano, 814 F.3d 553, 558 (1st Cir. 2016) ("We have repeatedly 'ha[d] no trouble concluding that the word "sentence" in [a plea agreement's] waiver encompasse[d] every component of the sentence, including the term of supervised release and its attendant conditions, thus bringing the instant action within the waiver's reach.'" (alterations in original) (quoting United States v. Santiago, 796 F.3d 1, 7 (1st Cir. 2014))); United States v. Rojas, 780 F.3d 68, 69 (1st Cir. 2015).   Our law is also clear that a waiver of appeal extends to conditions of supervised release even where a plea agreement does not specify a term of supervised release.   See United States v. Rivera-López, 736 F.3d 633, 634, 636 (1st Cir. 2013) (applying a waiver to a condition of supervised release where there was no mandatory term of supervised release and supervised release was not part of the sentence recommendation); see also Santiago, 769 F.3d at 7.   Cabrera has waived the right to appeal "the judgment and sentence," which, given the comprehensiveness of that phrase, is meant to include every component of the sentence imposed by the district court.   See United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000).

- 44 -

standard is met because of the combination of the defendant's significant liberty interest and the lack of a specific justification for the condition from the district court.  I disagree on both points.

As to the first, the majority focuses on Cabrera's parental rights to the detriment of the rights of his daughter (and son), and of his common law wife, who may want to use Probation to express their views as to any further contact between the defendant and his children when he is released after nine years. The majority and United States v. Del Valle-Cruz, 785 F.3d 48 (1st Cir. 2015), cite Quillon v. Walcott, 434 U.S. 246 (1978), for the proposition that "the relationship between parent and child is constitutionally protected."  Id. at 255.  That right does not accrue only to fathers; mothers and children have rights in that relationship as well.  Id.  Because of the rights of the other family members and the grave risk that Cabrera presents, the involvement of a probation officer, who can ask these other family members their views as to whether such contact is warranted at the time, can hardly be a miscarriage of justice.  The majority concedes that the well-being of Cabrera's wife and children is a relevant consideration when evaluating condition three, but gives that factor insufficient weight.  Given the details and severity of Cabrera's conduct as found by the district court, the necessity

of condition three for the well-being of Cabrera's children is clear.

We do not need to even infer the district court's reasons for imposing condition three, as it made those concerns explicit. The court was concerned about the risk of illegal actions by the defendant while on supervised release and explicitly raised the subject. The court warned Cabrera that he must realize that he could not "engage in the type of actions in which he engaged" and could not take advantage of people with learning disabilities.

And in response to an alleged threat from him against the victim and her family, the district court said the following:

> I will not be considering the issue of the threat [for the purposes of sentencing], though I warn this defendant that if anything happens to the family of this minor or to the minor during the time of, let's say your supervised release or any point afterwards, from the police perspective you will be the first suspect.

(emphasis added).

The district court later said:

> And the period of supervised release will be a significant one. In essence it will get to a point where if you do it right, if you restructure your life, if you don't give the Probation Officer any reason to believe that you are engaging in any similar action or in any other type of illegal action they will place you in minimal supervision. But if you

set a different course in life, then they will
be able to act.[22]

(emphasis added).  So the district court wanted Probation involved
to monitor the defendant on supervised release and said so.

Even if the district court had not been explicit, the
reason for condition three is easy to infer.  United States v.
Vélez-Luciano, 814 F.3d 553, 559 (1st Cir. 2016) (citation
omitted).  Condition three is justified by the severity,
deceitfulness, and sophistication of Cabrera's offense, as found
by the district court.[23]  Cabrera took advantage of the victim Jane

---

[22] The majority claims that "[t]he court did not reject
out-of-hand" the more favorable inferences urged by defense
counsel.  But the district court never credited defense counsel's
depiction of Cabrera's conduct.  The district court never adopted
defense counsel's argument that "this is not one of those people
who pr[e]ys on young women for the purpose of committing sexual
offenses."  The district court also never agreed with defense
counsel that "[t]his is just one of those cases of misjudgment of
what the law is . . . ."  Rather, the district court found that,
even if Cabrera had somehow been unaware that his behavior was
illegal, he was put on notice when one of his coworkers warned
him.  The district court's findings that Cabrera is a first-time
offender, that he had been in a long-term relationship with the
mother of his children, and that relatives and neighbors had
submitted letters on his behalf do not undermine the rationale for
condition three.

[23] I quote from the district court's statement at
sentencing:

> The Court also takes into consideration the
> circumstances surrounding the offense and it
> seems that in terms of the commission of the
> offense there is no doubt one, that the
> defendant knew that the victim was a minor.
> Two, based on the admissions made by the
> defendant at the time of the interview, he had
> been in continuous communications with the

- 47 -

Doe's vulnerabilities in order to use her for his sexual purposes. He knew she was receiving psychological treatment, and she was enrolled in a special education program due to learning disabilities. Cabrera first met the victim when she was twelve. He obviously knew that the victim was just sixteen when his grooming efforts succeeded.

Cabrera taught the victim how to download the application she used to send him images of herself and how to use a mobile phone camera self-timer so that she could "take pictures touching herself or in certain positions." Cabrera called the victim "everyday requesting pictures," and convinced her to send him "58-59 images depicting explicit sexual conduct as requested by him." He showed these images to his coworkers, and continued

minor since around the summer of 2012 and actually he also knew that she was receiving psychological therapy, though he didn't know the reason. And actually he admitted that he was the one that explained and instructed the minor how to download the "text now" application and how to communicate via text and how to up-load the images she was taking at his request. In addition to that it seems that, and based on the statement that is appear [sic] here, that Mr. Cabrera at different times showed the images to the coworkers. That is stated specifically at paragraph 17, and got my attention that even if he didn't know it was illegal at that point in time, the person that looked at it based on his statements, actually told him that he was getting into problems. This after he was showing those pictures at the workplace.

this behavior even after one of his coworkers warned him that he could get into trouble.

Throughout his misconduct, Cabrera "transferred images via Bluetooth to his prepaid cell phone," which he had at his sister's house so that he could keep the images and reduce the risk of detection. He regularly deleted the texting application he used to communicate with the victim to make sure that the images were removed from his primary cell phone, and so were hidden from his wife.

In light of these facts, the Presentence Investigation Report ("PSR") recommended, and the district court adopted, a host of conditions limiting Cabrera's contact with minors subject to Probation's approval. Cabrera is forbidden from "participat[ing] in any volunteer activity . . . that would bring him in close contact with a child unless" he gets prior approval from Probation; "work[ing] with children under the age of 18 or hold[ing] a job that gives him authority over potential victims" and obtaining employment without Probation's approval; and "hav[ing] . . . personal contact with . . . minors under the age of 18 . . . unless approved in advance by the Probation Officer" with an exception for incidental contact and contact with his relatives. The majority agrees that these conditions are not miscarriages of justice, but wants to create a special rule allowing Cabrera to reside with his children without Probation's involvement. Such a

rule is unjustified given the evidence in the record, the findings of the district court, and the reasons I have stated.

Cabrera's daughter will turn sixteen -- Doe's age at the time of Cabrera's offense -- during Cabrera's term of supervised release. Cabrera's predatory behavior toward the victim in this case and his ability to hide his behavior from his wife make condition three a sensible means of protecting Cabrera's children, especially his daughter. That protection is not a miscarriage of justice. See Vélez-Luciano, 814 F.3d at 563.

In response to all of this, the majority turns to Del Valle-Cruz to argue that more of an explanation was required before condition three was imposed. But the defendant in that case was less of a danger to his children than Cabrera is. Del Valle-Cruz had committed sexual misconduct eighteen years before his failure-to-register conviction -- which is not a sex offense -- and "ha[d] taken affirmative steps to turn his life around" apart from that. Del Valle-Cruz, 785 F.3d at 60-61. There is no eighteen-year period of good behavior here. Cabrera is being sentenced for a serious sex offense, the disturbing details of which warrant condition three.

Del Valle-Cruz is also unhelpful to the majority because it is a SORNA failure-to-register case. In order to determine whether the associational restrictions were justified in SORNA failure-to-register cases, this court searches for recent sexual

misconduct and violent behavior because "[s]uch restrictions operate to protect the public, especially children, from the defendant," United States v. Pabon, 819 F.3d 26, 31 (1st Cir. 2016), and past sex offenses demonstrate the need for such protection. Because failure to register as a sex offender is not itself a sex offense, courts look for sexual misconduct in the recent past in order to determine whether the defendant presents a danger to his children. See id.; Del Valle-Cruz, 785 F.3d at 60. Such an inquiry is unnecessary where, as here, the nature and details of a defendant's offense demonstrate the need for an associational restriction.[24] See Pabon, 819 F.3d at 31.

Condition three does not even bar Cabrera from residing or being alone with his children. It merely requires that Cabrera get approval from Probation beforehand. Probation would make that determination based on several factors, including "the defendant's placement in the sex offender risk assessment tools" and "the recommendation of the psychosexual treatment provider." Access to biological parents may be granted "once a third party risk assessment has been conducted with the custodial parent or legal

---

[24] The majority argues that I am applying a "categorical approach" to determine that condition three was justified. That is inaccurate. I am not arguing that any sex offense is sufficient to justify any condition of supervised release limiting contact with a defendant's minor children. Rather, my point is that the severity and details of Cabrera's offense justify the imposition of condition three such that the imposition can hardly be a miscarriage of justice or plain error.

guardian."  We upheld this type of condition in United States v.

Mercado, 777 F.3d 532 (1st Cir. 2015), reasoning that the

conditions were "sufficiently circumscribed" because the defendant

was still permitted to contact his minor children with pre-approval

from his probation officer.  Id. at 539.  As in Mercado, Cabrera

would have legal recourse if Probation kept him from his children

without good reason.[25]  Id.

B.    The Correct Standard of Appellate Review Precludes the
      Majority's Analysis

Cabrera waived plain error review by not making any

effort in his principal brief to explain why condition three failed

under even that standard.  See Pabon, 819 F.3d at 33.  In Pabon,

the court found that a plain error challenge failed because

"[a]lthough [the defendant] argues that the district court has

erred in numerous ways, he does not anywhere cite the four-factor

test or attempt to establish its latter three factors."  Id. at

34.

---

[25]    The majority asserts that we are departing from Del
Valle-Cruz by taking note of the fact that condition three does
not prohibit Cabrera outright from contacting his children.  But
Mercado, decided in February 2015, tells us that it is
"important[]" whether a condition serves as an outright ban or
merely "require[s] that his association with his children be pre-
approved by the probation officer . . . ."  777 F.3d at 539.  Del
Valle-Cruz, decided in April 2015, did not overrule Mercado on
this point, nor could it.  It instead distinguished the case on
the facts.  See Del Valle-Cruz, 785 F.3d at 61.

Cabrera has similar failings. His principal brief did not cite plain error cases, it did not couch its argument in the plain error terminology, and it did not even reference the plain error standard. Cabrera's brief does not mention Pabon -- the key case for determining whether Cabrera's sentence was plainly erroneous under this circuit's case law. Cabrera "le[ft] the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). He waived his plain error argument by doing so.

The majority attempts to avoid the waiver by arguing that the difference between the miscarriage of justice standard and the plain error standard is blurry, and so it does not make sense find that the plain error argument has been waived where a party has made a miscarriage of justice argument. The fact that information relevant to the four prongs of the plain error standard was present in the principal brief does not preserve an unmade plain error argument.

The court's holding here adds to whatever confusion already existed by making a broad pronouncement about the similarity between two standards. This conclusion is particularly inappropriate because there was no briefing on the similarities and differences between the two standards.[26]

---

[26] The majority also argues that Pabon "did not address such claims in the context of an appellate waiver." That is true,

The majority's analysis of the merits of the plain error challenge is also, in my view, incorrect. The second, third, and fourth prongs of plain error review are clearly absent for the reasons already explained and under our precedent. When faced with a similar condition, this court found that "at least two courts of appeals have held that a prior sex offense against a minor is sufficient to justify similar associational conditions, even where the record did not include particularized findings." Pabon, 819 F.3d at 34. From this, the court in Pabon reasoned that "[w]here, as here, there is no controlling authority or clearly established legal norm, and other circuits have differing views, we think that the issue is, at best, one of reasonable dispute. Thus there is no clear or obvious error." Id. There is still no controlling authority on this issue, so there is no plain error.

The majority attempts to distinguish Pabon, but is unsuccessful. The majority argues that "Cabrera's crime did not involve a girl below the applicable age of consent and did not take place at a domestic partner's home," and "any physical relationship he had with Doe would not itself have been unlawful."

---

but irrelevant. Once the majority reaches plain error review, the appellate waiver is already out of the picture, and we need to address the arguments for why the district court plainly erred. Here, Cabrera has not made a plain error argument and that should have ended this appeal.

As I explained above, there is ample evidence in the record showing that Cabrera presents a danger to his children.[27]  The case for the restriction is even stronger here because, unlike Pabon, Cabrera is being sentenced for a sex offense.

---

[27]  The majority also states that Cabrera's situation is different because "unlike the defendant in Pabon -- who had 'violent inclinations' -- Cabrera's PSR depicts him as a stable and supportive father and domestic partner." (citation omitted). Cabrera may have been a supportive father to his two-year-old son, but he was arrested before the birth of his daughter so there can be no history as to the daughter.  Similarly, the record does not say that Cabrera is without "violent inclinations."  The PSR and testimony at sentencing indicate that, when confronted by Doe's brother about his behavior, Cabrera beat him with a blunt object. The victim's parents stated that the injuries to Doe's brother required hospitalization and two head surgeries.  The district court did not determine who started the fight and said that, "even in a fight there are times in which a person has to put a stop to the amount of damage that he is able to cause.  I find that troublesome."  Contrary to the majority's view, the PSR and district court's findings about Cabrera's deceitful behavior toward the mother of his children does not square with him being a "supportive . . . domestic partner." Pressuring a sixteen-year-old with a learning disability and emotional issues to send him naked pictures is not a "stable" thing to do.